Heidi G. Goebel (10343)
Samantha E. Wilcox (15284)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, UT  84111
Telephone:  801.441.9393
HGoebel@gapclaw.com
SWilcox@gapclaw.com
*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION**

| | |
|---|---|
| DEAN JEFFRIES L. GOODRIDGE, Individually and as Personal Representative of the Estate of TAYLOR GOODRIDGE, Deceased,<br><br>        Plaintiff,<br><br>vs.<br><br>DIAMOND RANCH ACADEMY, INC.,<br><br>        Defendant. | **RULE 12(b) MOTION TO DISMISS**<br><br>Case No. 4:22-CV-00102-DN<br><br>District Judge David Nuffer<br><br>**(Hearing Requested)** |

Defendant Diamond Ranch Academy, Inc. ("DRA"), by and through its counsel of record, respectfully moves this Court to dismiss Plaintiff Dean Jeffries L. Goodridge's Complaint without prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## RELIEF SOUGHT AND SPECIFIC GROUNDS

The subject medical malpractice action arose after Ms. Taylor Goodridge ("Taylor") unexpectedly died while receiving in patient treatment for youths at DRA. Taylor's father, Plaintiff Dean Jeffries L. Goodridge ("Goodridge"), generally alleges Taylor's death was caused by DRA's failure to provide Taylor with proper and sufficient medical care.

This Court should dismiss Goodridge's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Goodridge's claims against DRA are subject to the Utah Health Care Malpractice Act ("the Act" or "the Malpractice Act").[1]  Section 78B-3-416(1)(c) of the Act requires Goodridge to submit his medical malpractice claims to a non-binding prelitigation hearing through the Division of Professional Licensing ("DOPL") "as a condition precedent to commencing litigation."[2]  Goodridge has yet to participate in this non-binding prelitigation hearing, and thus, this Court presently lacks subject matter jurisdiction over the matter.  Accordingly, this Court should dismiss Goodridge's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, this Court should stay all litigation until Goodridge has complied with all pre-litigation administrative requirements.

Additionally, this Court should dismiss three of Goodridge's six causes of action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  The underlying facts giving rise to Goodridge's claim clearly demonstrate the subject litigation is a wrongful death action arising from medical malpractice.  Despite this, Goodridge has creatively asserted multiple causes of action that are either not cognizable in civil litigation or that do not apply based on the facts asserted.  Thus, pursuant to Fed. R. Civ. P. 12(b)(6), this Court should dismiss Goodridge's claims for premises liability, inn keeper liability, and child abuse for failure to state a claim.

---

[1] Utah Code Ann. § 78B-3-401, *et seq.*
[2] Utah Code Ann. § 78B-3-416(1)(c).

## FACTS[3]

### *Facts re: DRA's Status as "Health Care Provider."*

1.      "DRA is a residential treatment center and therapeutic boarding school in Hurricane, Utah" that specializes in "provid[ing] in-patient treatment" "for troubled youth between the ages of 12 and 18."[4]

2.      "DRA employs . . . licensed physicians, and healthcare providers."[5]

3.      "DRA invites parents . . . to bring their children who are struggling with emotional and addiction issues, for treatment and care."[6]

4.      "DRA promises parents that students will be allowed to ensure for their basic health needs, such as requesting appointments with on and offsite providers, addressing medical concerns with professionals and that the medical staff would attend to their needs onsite as if they were in their family medical practice."[7]

### *Underlying Facts re: Medical Malpractice/Wrongful Death Claims*

5.      Taylor was removed from her home in the State of Washington, matriculated into the DRA program and physically placed at DRA, where she became a resident for several months.[8]

6.      When "Taylor entered DRA [she was] in very good health."[9]

---

[3] All "facts" presented herein are based strictly on allegations within Goodridge's First Amended Complaint are submitted herein for purposes of this Motion only.  DRA's presentation of these "facts" should not be construed as any sort of admission or waiver by DRA, and DRA expressly reserves its right to dispute any and all facts alleged within Goodridge's First Amended Complaint at a later date and if so required.

[4] *See* First Amended Complaint, Feb. 17, 2023, Dkt. No. 6, ¶¶ 1, 7, attached hereto as "**Exhibit 1**."

[5] *Id.* ¶ 9.

[6] *Id.* ¶ 11.

[7] *Id.* ¶ 15.

[8] *See id.* ¶ 16.

[9] *Id.* ¶ 19.

7.      [I]n December 2022, Taylor began to experience abdominal pain."[10]

8.      "On December 13, 2022, Taylor was vomiting and reported such to DRA," which resulted in "Taylor's scheduled Zoom call with her parents" to be "canceled by DRA based upon health issues." [11]

9.      Taylor subsequently reported vomiting again on December 15, 17, and 20, 2023.[12]

10.     Taylor's "complaints were ignored by the staff at DRA." *Id.* ¶ 28.  Rather, DRA "t[old] her to drink water and take aspirin."[13]

11.     "[O]n December 20, 2022, Taylor collapsed and died" while receiving treatment in medical.[14]

12.     "Upon information and belief, Taylor died of sepsis related to her several days of complaints to the staff."[15]

### *Procedural Facts*

13.     Goodridge   commenced   this   lawsuit   on   December   30,   2022.[16] On February 17, 2023, Goodridge filed his First Amended Complaint asserting six causes of action for: (1) False Imprisonment; (2) Premises Liability; (3) Innkeeper Liability; (4) Child Abuse; (5) Negligence/Knowing and Reckless Indifference; and (6) Breach of Fiduciary Duty.[17]

---

[10] *Id.* ¶ 20.
[11] *Id.* ¶¶ 22–23.
[12] *Id.* ¶¶ 24, 32, 37.
[13] *Id.* ¶ 31.
[14] *Id.* ¶ 38.
[15] *Id.* ¶ 42.
[16] *See* Complaint, Dec. 30, 2022, Dkt. No. 2.
[17] *See generally*, Exhibit 1, First Amended Complaint (referred to hereinafter as "**Complaint**").

14.     Notably, within his Complaint, Goodridge concedes that he has not *completed* the prelitigation hearing through DOPL prior to commencing litigation.[18]  Rather, in the "Jurisdiction" section of his Complaint, Goodridge avers that he "is in the process of complying with Utah Code Ann. §§ 78B-3-401, *et seq.*, in order to bring an action against [DRA] pursuant to the [Act] and the complaint will be amended once that process is complied with."[19]

15.     Goodridge's Notice and Request for Prelitigation Hearing that he submitted to DOPL includes individuals who are not named in this lawsuit, and who, depending on the outcome of the Prelitigation Hearing could possibly be added as additional defendants to this lawsuit.

## ARGUMENT

This Court should dismiss  the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or alternatively, the Court should stay the litigation pending completion of the DOPL pre-litigation administrative review process.  Additionally, this Court should dismiss three of Goodridge's six causes of action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### I.      The Complaint must be dismissed for lack of subject matter jurisdiction.

"[F]ederal courts are courts of limited jurisdiction," and thus, this court "presume[s] no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction."[20]  Thus, "the party invoking federal jurisdiction . . . must 'allege in [its] pleading the facts essential to show jurisdiction,' and 'must support [those facts] by competent proof.'"[21]

---

[18] *See id.* ¶ 6.
[19] *Id.*
[20] *U.S. ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992).
[21] *Id.* (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)) (modifications in original).

This Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) because Goodridge has failed to allege facts that establish subject matter jurisdiction.  More specifically, given that the claims arise from medical malpractice, this Court must dismiss the  Complaint for lack of subject matter jurisdiction because (1) Goodridge failed to plead or establish he provided adequate notice to DRA prior to commencement of this medical malpractice action; and (2) Goodridge admits within the Complaint he has yet to complete the statutorily required DOPL prelitigation hearing process, which is "compulsory as a condition precedent to commencing litigation."[22]

"Utah's Health Care Malpractice Act (Malpractice Act) gives health care providers procedural protections not afforded to other alleged tortfeasors."[23]  More specifically, "the Act requires claimants to participate in certain prelitigation procedural requirements" prior to commencing litigation.[24] "'Two of the prelitigation procedures created by the Medical Malpractice Act stand out because they have been expressly designated as *preconditions to invoking the jurisdiction* of the district court: the notice of intent to commence action, and the prelitigation hearing.'"[25]

In the instant matter, Goodridge failed to give proper notice to DRA prior to commencing litigation, and admits he failed to complete the DOPL prelitigation hearing process before commencing litigation.  Thus, this Court lacks subject matter jurisdiction, and the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

---

[22] Utah Code Ann. § 78B-3-416(1)(c).
[23] *Van Ornum v. Am. Med. Ass'n*, No. 2:14-CV-921-RJS-EJF, 2017 WL 9481232, at *3 (D. Utah July 14, 2017).
[24] *Id.*
[25] *Id.* (quoting *Labelle v. McKay Dee Hosp. Ctr.*, 2004 UT 15, ¶ 4, 89 P.3d 113, 114) (emphasis added).

a. *Goodridge is required to comply with the Act because he has commenced medical malpractice claims against a health care provider.*

Utah's "Malpractice Act applies to any 'malpractice action against a health care provider.'"[26]

Goodridge is required to comply with the procedural hurdles set forth within the Malpractice Act

because he has alleged malpractice claims against DRA, who is a health care provider.

i. **DRA qualifies as a health care provider under the Malpractice Act.**

The Malpractice Act broadly defines a "health care provider" as

> **any** person, . . . **corporation, or other facility or institution who causes to be rendered or who renders health care or professional services** as a hospital, health care facility, **physician**, physician assistant, **registered nurse, licensed practical nurse,** . . . **clinical social worker, certified social worker, social service worker,** marriage and family counselor, . . . **or others rendering similar care and services relating to or arising out of the health needs of persons or groups of persons** and officers, employees, or agents of any of the above acting in the course and scope of their employment.[27]

Additionally, "[a]ll others rendering care and services similar to those so explicitly identified are also

'health care providers'" under the Malpractice Act.[28]  "Whether an entity is a health care provider is

a factual determination made by comparing the actual services rendered by the entity to services

rendered by a health care provider listed in the [the Malpractice Act]."[29]

In *Scott*, this Court concluded that Wingate Wilderness Therapy ("Wingate"), a youth

"wilderness therapy" provider, qualified as a "health care provider" as that term is defined under the

---

[26] *Scott v. Wingate Wilderness Therapy, LLC*, 2021 UT 28, ¶ 22, 493 P.3d 592, 598–99.
[27] Utah Code Ann. § 78B-3-403(13) (emphasis added).
[28] *Scott v. Wingate Wilderness Therapy, LLC*, No. 4:18-CV-0002-DN, 2019 WL 1206901, at *3 (D. Utah Mar. 14, 2019), *aff'd*, 854 F. App'x 984 (10th Cir. 2021) (quoting *Platts v. Parents Helping Parents*, 947 P.2d 658, 663 (Utah 1997)).
[29] *Scott*, 2019 WL 1206901, at *3.

Malpractice Act.[30]  In that matter, "Wingate . . . operate[d] an outdoor youth program" that was purposed "to provide behavioral, substance abuse, and mental health services to troubled adolescents."[31]  Youth participants at Wingate engaged in "[c]amping, hiking, climbing, and exploring the wilderness as part a resident's recovery and treatment," which was administered by Wingate's "licensed therapists, psychologists and various other professionals."[32]  Based on these facts, this Court concluded that Wingate "qualifie[d] as a health care provider under the broad language of the UHCMA" because Wingate "provides behavioral or mental health services" that "relat[e] to or aris[e] out of the health needs" of its youth participants, and because "Wingate provides services similar to those provided by a psychologist, clinical social worker, certified social worker, and a marriage and family counselor."[33]

Similarly, DRA qualifies as a health care provider under the broad language of the Malpractice Act.  Indeed, Goodridge alleges in his Complaint that "DRA *is a residential treatment center* and therapeutic boarding school" that provides in-patient treatment and treatment and care to troubled youth.[34]  The Complaint further expressly alleges that DRA employs, among others, licensed physicians, and healthcare providers, who are employed to address[ the] medical concerns of its residents, and that DRA's medical staff would attend to [the] needs of its residents onsite as if they were in their family medical practice.[35]  Thus, DRA undisputedly provides behavioral, mental health,

---

[30] *Scott*, 2019 WL 1206901, at *3 (D. Utah Mar. 14, 2019), *aff'd*, 854 F. App'x 984 (10th Cir. 2021).

[31] *Id.* at *1.

[32] *Id.*

[33] *Id.* at *3 (modifications in original).

[34] *See* Exhibit 1, Complaint, ¶¶ 1, 7, 11 (emphasis added).

[35] *Id.* ¶¶ 9, 15.

and other health-related services that relate to or arise out of the health needs of its residents and qualifies as a "health care provider" as that term is defined in Utah Code Ann. § 78B-3-403(13).

ii. ***Goodridge has alleged medical malpractice claims against DRA.***

The Utah Supreme Court recently clarified that Utah's Malpractice "Act applies when a plaintiff files suit against a 'health care provider,' and the alleged injuries 'relat[e] to or aris[e] out of health care rendered . . . by the health care provider.'"[36]  The Act specifically defines a "Malpractice action against a health care provider" as "*any action against a health care provider*, whether in contract, tort, breach of warranty, wrongful death, or otherwise, *based upon alleged personal injuries relating out of health care* rendered or *which should have been rendered* by a health care provider."[37]

"Health care" is defined within the Malpractice Act as "an 'act or treatment' that was or *should have been 'performed or furnished'*: (1) 'for, to, or on behalf of a patient'; (2) 'during the patient's medical care, treatment, or confinement'; and (3) by a 'health care provider.'"[38]  Thus, "[s]o long as an expressly listed 'health care provider' performs an act or treatment 'for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement,' then that act or treatment is 'health care' under the Malpractice Act."[39]  Moreover, "so long as a person or entity who qualifies as a 'health care provider' performs or should have performed an 'act or treatment' 'for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement,' then that act, treatment, or omission qualifies as 'health care' under the Malpractice Act."[40]

---

[36] *Scott*, 2021 UT 28, ¶ 23 (quoting Utah Code Ann. § 78B-3-403(17)).
[37] Utah Code Ann.  § 78B-3-403(18) (emphasis added).
[38] *Scott*, 2021 UT 28, ¶ 24 (quoting Utah Code Ann. § 78B-3-403(10)) (emphasis added).
[39] *Scott*, 2021 UT 28, ¶ 42.
[40] *Id.* ¶ 45.

It is contextually important to note that "[t]he Malpractice Act is designed to 'expedite early evaluation and settlement' of professional malpractice claims against health care providers by applying certain hurdles . . . to health care malpractice actions."[41]  With this purpose in mind, the Utah Supreme Court explained that applying a "narrow" construction of what actions relate to or arise out of health care "would make little sense," as it would "constrict the Act's reach" and hinder "the Act's goal of expediting and facilitating settlement of claims against health care providers."[42]  "When read in context, it becomes evident that the terms "health care" and "health care provider" do the heavy lifting in defining when the Act applies."[43]

In *Scott*, this Court dismissed Jacob Scott's medical malpractice claim against Wingate Wilderness Therapy after this Court concluded that "Wingate is a health care provider; the injury in this case relates to or arose out of health care rendered or which should have been rendered; [and] Scott failed to comply with the pre-litigation requirements of the Utah Health Care Malpractice Act."[44]  Scott appealed, and in 2021, the Tenth Circuit Court of Appeals certified "the following question to the Utah Supreme Court:  Where Wingate is a "health care provider" under Utah Code § 78B-3-403(12), does an injury sustained by a plaintiff while climbing a rock formation during a "wilderness therapy" program operated by Wingate "relat[e] to or aris[e] out of health care rendered or which should have been rendered by [a] health care provider" within the meaning of the UHCMA?"[45]

---

[41] *Id.* ¶ 60.

[42] *Id.*

[43] *Id.* ¶ 64.

[44] Scott, 2019 WL 1206901, at 1, *aff'd*, 854 Fed. App'x 984 (10th Cir. 2021).

[45] *Scott*, 792 Fed. Appx. 590, 595 (10th Cir. 2019).

In answering this question, the Utah Supreme Court noted that Jacob Scott ("Jacob") was enrolled in Wingate's wilderness therapy program at age 17.[46]  Jacob's treatment plan consisted of weekly individual and group therapy as well as daily psychoeducational and process groups.[47]  Notably, "climbing" was not "a component of Jacob's therapy" or treatment plan.[48]  However, during Jacob's enrollment in Wingate and while "hiking" with other youths and Wingate staff members, and Jacob "slipped on the snow and fell approximately twenty-five feet to the ground," causing him to sustain bodily injuries.[49]  Jacob subsequently alleged negligence against Wingate based on his contention that, among other things, Wingate breached a duty of care by "not doing anything to determine whether the climbing of the rock formation would be safe for the youth," "not properly assessing the danger of allowing the youth to climb the rock formation," and "not assisting Jacob with his descent."[50]

In evaluating whether Jacob's rock climbing injury sufficiently related to or arose from "health care" that would subject his claim to the procedural requirements within the Act,  the Utah Supreme court relied heavily on the plain language of the Act and "conclude[d] that *'health care' constitutes acts or treatments* which were or *should have been "performed or furnished*": (1) "by any health care provider"; (2) "for, to, or on behalf of a patient"; and (3) "during the patient's medical care, treatment, or confinement."[51]

---

[46] *Scott*, 2021 UT 28, ¶ 8.
[47] *Id.*
[48] *Id.*
[49] *Id.* ¶ 9.
[50] *Id.* ¶ 10.
[51] *Id.* ¶ 51 (quoting Utah Code Ann. § 78B-3-403(10)) (emphasis added); *see also id.* ¶ 64.

> There is no magic, nor hidden meaning, in the phrase 'relating to or arising out of.' 'Arising' out of means to 'originate from.' 'Relating to' means to have a connection with.  When read in context, it becomes evident that the terms "health care" and "health care provider" do the heavy lifting in defining when the Act applies.[52]

Under this standard, "the Act does not apply when a health care professional's 'alleged transgressions are only tangentially related to their provision of health care services.'"[53]  For example, "the Act would *not* apply to a patient's tort claim for conversion against their doctor who stole money from the patient's wallet during a medical exam" because "the patient's loss of cash is not an injury that originated from the provision of health care" and theft is not "an omission of or a negligent version of an act that does not have a medical or health purpose."[54]  Similarly, "the Act would likely not apply if the plaintiff were injured in an ambulance because of some mechanical failure" because the alleged "injury arose from a mechanic's negligent installation of the ambulance's lug nuts" and not "from 'health care' rendered by a 'health care provider,'" and "because the mechanic's general auto-mechanic maintenance work could not reasonably be considered 'for, to, or on behalf of' that patient and within the course of or 'during' that patient's 'medical care, treatment, or confinement.'"[55]  "But if, on the other hand, the plaintiff alleged that a paramedic negligently chose a detour that delayed the patient's arrival at the hospital, and the plaintiff's injuries arose from that delay, the plaintiff's claims might very well 'relate to or arise out of' health care" and the procedural provisions within the Malpractice Act would apply.[56]

---

[52] *Id.* ¶ 64.

[53] *Id.* ¶ 54 (quoting *Dowling v. Bullen*, 2004 UT 50, ¶ 8, 94 P.3d. 915).

[54] *Id.* ¶ 69.

[55] *Id.* ¶ 73 (referencing Utah Code Ann. § 78B-3-403(10)).

[56] *Id.* ¶ 74.

To be clear, however, the Act's application is not so stringent to require "a proximate causation relationship between the provision of health care and the [alleged] injury," as this "would narrow the potential universe of circumstances where the Act might otherwise apply" and would improperly "constrict the Act's reach" and limit it's "goal of expediting and facilitating settlement of claims against health care providers."[57]  Rather, courts must "look to the relationship between that health care" that "was rendered (or should have been rendered)" and "the patient's injuries."[58] "That is, the injury must originate from or be connected to something a health care provider did *nor should have done* in the course and scope of providing health care to that patient" in order for the Malpractice Act to apply.[59]

With respect to Jacob Scott's claims, the Utah Supreme Court held that "the Act applied to the claims Jacob raise[d]" because "at least part of the wilderness therapy Wingate provided to Jacob was health care," and "Jacob's injuries relate to or arise out of that health care."[60]  Indeed, Jacob's "written 'treatment plan' . . . called for Jacob to be 'immersed in wilderness principles and experiences,'" among other things, and specifically "include[ed] 'hiking (exercise).'"[61]  "Thus, the scope of treatment prescribed indicates that the group hike and the rock climbing during that hike were done 'for . . . or on behalf of' Jacob, 'during [his] medical care, treatment, or confinement' and therefore constitutes 'health care.'"[62]  As a result, Jacob was required to abide by the provisions

---

[57] *Id.* ¶¶ 57, 60.
[58] *Id.* ¶ 67.
[59] *Id.*
[60] *Id.* ¶ 76.
[61] *Id.* ¶ 81.
[62] *Id.* (modifications and omissions in original).

of the Malpractice Act and participate in the DOPL prelitigation process prior to commencing suit against Wingate.

In so holding, the Utah Supreme Court took care to note that while "Wingate's staff may have *negligently* implemented Jacob's treatment[, that] does not mean that negligent treatment escapes the Act's grip. This is precisely what the Act ensnares."[63]  "Likewise, *'health care' applies not only to affirmative acts or treatments, but also to those "which should have been performed or furnished."*[64]  Accordingly, "Jacob's suggestion that the Act d[id] not apply because Wingate failed to protect him from unsafe conditions" was unpersuasive and did not result in Jacob's claims being exempt from the Malpractice Act's prelitigation DOPL review process.[65]  Thus, "the Act applies to Jacob's claims."[66]

Similarly, in the instant matter, all the Complaint's causes of action against DRA arise from the contention that DRA—as Taylor's health care provider—failed to render appropriate care and treatment to Taylor.  Indeed, within nearly all the causes of action, the Complaint alleges that DRA "fail[ed] to treat Taylor" properly and "with[eld] medical care."[67]  Similarly, the negligence cause of action alleges that DRA "[f]ail[ed] to provide Taylor Goodridge with adequate . . . care," "[f]ail[ed] to properly assess, document, and treat Taylor Goodridge's health condition," "[f]ailed to properly assess, document, and treat Taylor Goodridge's health condition," and otherwise failed by "[n]ot acting immediately to seek medical treatment for Taylor Goodridge."[68]  Within the facts

---

[63] *Id.* ¶ 89 (emphasis in original).
[64] *Id.* (quoting Utah Code Ann. § 78B-3-403(10)) (emphasis added).
[65] *Id.* ¶ 90.
[66] *Id.* ¶ 94.
[67] *See* Exhibit 1, Complaint, ¶¶ 28, 50, 55, 61.
[68] *Id.* ¶ 69(a)-(c), (e).

pertaining to the  breach of fiduciary duty cause of action, the Complaint alleges "DRA breached the fiduciary duty it owed to Plaintiff and his daughter in failing to provide proper medical care to Taylor."[69]  If a wilderness therapy camp's alleged failure to provide adequate supervision to a teen during a hiking activity constitutes "health care" and is subject to the Malpractice Act,[70] then DRA's alleged failure to provide adequate medical care to Taylor while she was receiving in-patient treatment at DRA must qualify as "health care" as well.  Thus, Goodridge's claims are all subject to the pre-litigation procedural requirements as set forth within the Malpractice Act.

      b.  *Goodridge failed to comply with the Malpractice Act's notice requirements prior to commencing suit.*

This Court presently lacks subject matter jurisdiction over the claims raised in the Complaint because Goodridge failed to comply with the Malpractice Act's notice requirements prior to commencing litigation. Utah's Malpractice Act "entails certain procedural protections against lawsuits—protections not granted [to] other alleged tortfeasors."[71]  More specifically, "[a] malpractice action against a health care provider *may not be initiated* unless and until the plaintiff . . . gives the prospective defendant . . . at least 90 days' prior notice of intent to commence an action."[72] "Notice may be in letter or affidavit form executed by the plaintiff or his attorney," and it must be served upon the defendant "in the manner prescribed . . . for the service of the summons and complaint in a civil action or by certified mail, return receipt requested."[73]  The "notice shall include: (a) a general statement of the nature of the claim; (b) the persons involved; (c) the date, time, and place of

---

[69] *Id.* ¶ 75.
[70] *See Scott*, 2021 UT 28, ¶ 94.
[71] *Carter v. Milford Valley Mem'l Hosp.*, 2000 UT App 21, ¶ 13, 996 P.2d 1076, 1079.
[72] Utah Code Ann. § 78B-3-412(1)(a) (emphasis added).
[73] *Id.* § 78B-3-412(3).

the occurrence; (d) the circumstances surrounding the claim; (e) specific allegations of misconduct on the part of the prospective defendant; and (f) the nature of the alleged injuries and other damages sustained."[74]  "If these requirements are not fully met, the action will be dismissed."[75]

In *Yates*, the Utah Supreme Court held dismissal of claims against various health care providers was proper where the plaintiff failed to give proper notice of her claims pursuant to the requirements set forth in the Malpractice Act.[76]  In that matter, Velma Yates was allegedly prescribed medications by Dr. Balka that she became addicted to, which allegedly resulted in her abusing and overdosing on the medication—leading to her being admitted to Uintah County Hospital.[77]  During her hospitalization,  Yates allegedly received negligent treatment that caused her to experience convulsive seizures, resulting in a permanent central nervous system disorder.[78]  Prior to commencing litigation, Yates' *husband*, Marzine Yates, served a document in letter form which purported to be the notice required under the Malpractice Act, wherein he identified himself as the potential clamant rather than Velma.[79]  Further, the, notice did not contain all of the elements required by the Malpractice Act.[80]  Approximately three months later, Velma Yates filed her complaint against her various medical providers and alleged medical malpractice claims.[81]  The various medical providers

---

[74] *Id*. § 78B-3-412(2).
[75] *Carter*, 2000 UT App 21, ¶ 13.
[76] *Yates v. Vernal Fam. Health Ctr.*, 617 P.2d 352 (Utah 1980).
[77] *Id.* at 353.
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*

"each filed a motion to dismiss arguing the notice was deficient," which was granted by the district court and affirmed on appeal.[82]

Similarly, this Complaint should be dismissed for lack of subject matter jurisdiction because Goodridge failed to allege compliance with the Malpractice Act's notice requirements set forth in Utah Code Ann. § 78B-3-412.  "To survive a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'"[83]  "Because compliance with the Malpractice Act's procedures stands as a prerequisite to suit," a plaintiff alleging medical malpractice must allege compliance with the Malpractice Act's notice procedures to state a plausible claim.[84]  If a plaintiff fails to allege compliance with the notice requirement within his or her pleadings, the Court lacks subject matter jurisdiction over [the plaintiff's] personal injury claims arising from allegedly deficient health care treatment.[85]

Where *deficient* notice justified dismissal of the *Yates* litigation, Goodridge's complete failure to plead compliance of any sort with the Malpractice Act's notice requirements certainly justifies dismissal as well.  Thus, this Court lacks subject matter jurisdiction over Goodridge's claims, and his claim must be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

---

[82] *Id.* at 353-54. The Utah Supreme Court clarified that the dismissal was without prejudice and that Mrs. Yates had "one year" to "serve a proper notice of intent to commence action prior to filing another complaint."  *Id.* at 354.

[83] *Van Ornum*, 2017 WL 9481232, at *4 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[84] *Id.*

[85] *Id.*

c. *Goodridge failed to complete the DOPL prelitigation review process prior to commencing litigation.*

Additionally, this Court presently lacks subject matter jurisdiction over the litigation because Goodridge failed to *complete* the DOPL prelitigation review process, which must occur prior to the filing of the lawsuit.  With respect to the prelitigation hearing process, the Malpractice Act mandates that DOPL shall provide a hearing panel in alleged medical liability cases against health care providers for purposes of prelitigation consideration of medical liability claims for damages arising out of the provision of or alleged failure to provide health care.[86]  The Malpractice Act explicitly provides DOPL's prelitigation "proceedings are informal, [and] nonbinding . . . *but are compulsory as a condition precedent to commencing litigation.*"[87]  It is axiomatic that a condition precedent is an act that must occur before a subsequent right or duty of performance arises.[88]  Thus, non-occurrence of a condition precedent prevents that subsequent right or entitlement from ever accruing.[89]

In *Aus*, this Court explicitly held any medical malpractice claim brought prior to completion of the prelitigation DOPL review process is subject to dismissal as a matter of law because completion of this administrative procedure is compulsory as a condition precedent to commencing litigation.[90]  In that case, the plaintiffs brought a civil rights action against various defendants.[91]  Sometime thereafter, the plaintiffs filed a motion for leave to amend their complaint for purposes of adding a new medical malpractice claim under Utah state law against Wellcon,

---

[86] Utah Code Ann. § 78B-3-416(1)(a)–(b)(i).
[87] *Id.* § 78B-3-416(1)(c) (emphasis added).
[88] *See B-B Co. v. Piper Jaffray & Hopwood, Inc.*, 931 F.2d 675, 678 (10th Cir. 1991).
[89] *See id.*
[90] *Aus v. Salt Lake Cnty.*, Case No. 216CV00266JNPBCW, 2017 WL 1383698, at *3 (D. Utah Apr. 18, 2017).
[91] *Id.* at *1.

Inc.[92]   The defendants opposed the addition of a medical malpractice claim because the plaintiffs had not yet completed the Malpractice Act's mandatory prelitigation procedures, which are a prerequisite to any malpractice suit against a healthcare provider.[93]   In response, the plaintiffs acknowledged they had yet to comply with all conditions precedent to suit as specified within the Malpractice Act but insisted they could do so in relatively short order and predicted that no more than a few months were required to complete the prelitigation process.[94]

Despite the plaintiffs' anticipated completion of the DOPL prelitigation review process "in relatively short order," this Court held "that amendment of Plaintiffs' complaint to add a medical malpractice claim at th[at] stage would be futile" because "Plaintiffs' malpractice claim would be immediately subject to dismissal upon filing of the amended complaint" given that "Plaintiffs acknowledged they ha[d] not yet completed the mandatory pre-litigation procedures under the [Malpractice Act]."[95]   Because completion of the DOPL pre-litigation review process is "compulsory as a condition precedent to commencing litigation," this Court concluded "any claim brought prior to their completion is subject to dismissal as a matter of law."[96]   Thus, this Court denied the plaintiffs' motion for leave to amend their complaint for purposes of adding a medical malpractice claim.[97]

This conclusion and justification for Rule 12(b)(1) dismissal of medical malpractice claims has been consistently (and recently) applied by both Utah state and federal courts alike.   For

---

[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *Id.* at *3.
[96] *Id.*
[97] *Id.*

example: In 2021, the Supreme Court of Utah confirmed that the Malpractice Act requires prelitigation review prior to a litigant being entitled to maintain any medical malpractice claims against a health care provider.[98] Also in 2021, the Utah Court of Appeals held that "[u]nder the Act, a plaintiff must submit a malpractice claim to a prelitigation panel as a prerequisite to filing a lawsuit," and noted that completion of the DOPL proceeding is "compulsory as a condition precedent to commencing litigation."[99] In 2018, the Supreme Court of Utah held that "a plaintiff must present [a medical malpractice] claim to a prelitigation panel *as a condition precedent* to commencing litigation."[100] And in 2009, this Court granted dismissal of a plaintiff's medical malpractice claims where the plaintiff did not dispute he had failed to comply with the Malpractice Act's prelitigation requirements.[101]

The subject litigation is no exception and should be similarly dismissed because Goodridge has failed to comply with the Malpractice Act and *complete* the DOPL pre-litigation review process prior to commencing litigation.  Indeed, Plaintiff admits in his Complaint that he is currently "in the process of complying with Utah Code Ann. §§ 78B-3-401, *et seq.*, in order to bring an action against [DRA] pursuant to the Utah Health Care Malpractice Act."[102]  But this procedural admission is an implicit concession that Goodridge has not *completed* the DOPL prelitigation process, which justifies dismissal. Indeed, Plaintiff represents "the complaint will be amended once that process is complied with,"[103] but this commitment is insufficient to survive a

---

[98] *Scott*, 2021 UT 28, ¶ 44.
[99] *Turpin v. Valley Obstetrics & Gynecology*, 2021 UT App 12, ¶ 5 n. 4, 482 P.3d 831.
[100] *Jensen v. Intermountain Healthcare, Inc.*, 2018 UT 27, ¶ 8, 424 P.3d 885.
[101] *Webb v. Claimetrics Mgmt., LLC*, No. 2:08-CV-842 CW, 2009 WL 4730789, at *10–11 (D. Utah Dec. 7, 2009). *aff'd*, 412 F. App'x 107 (10th Cir. 2011).
[102] Exhibit 1, Complaint, ¶ 6.
[103] *Id.*

motion to dismiss given that Plaintiff "must allege compliance" with the Malpractice Act's procedural requirements to state a plausible claim and survive a motion to dismiss.[104]  This Court lacks subject matter jurisdiction over Plaintiff's medical malpractice claims until he completes the DOPL prelitigation review process, and Plaintiff admits this process is not yet complete.  Thus, this Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, it should stay the litigation pending completion of the DOPL prelitigation review process.

## II.      Goodridge's Causes of Action Nos. 2-4 should be dismissed for failure to state a claim upon which relief may be granted.

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[105]  When evaluating dismissal of claims pursuant to Rule 12(b)(6), the Court must accept the well-pleaded facts as true and view the allegations alleged within the complaint in the light most favorable to the non-movants.[106]  When doing so, however, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation."[107]  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[108]

The *Twombly/Iqbal* pleading standard requires the Court to take a two-pronged approach to evaluating the sufficiency of a complaint.[109]  First, the Court must identify and disregard all

---

[104] *See Van Ornum*, 2017 WL 9481232, at 4.
[105] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).
[106] *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010).
[107] *Twombly*, 550 U.S. at 555.
[108] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[109] *Id.* at 678–79.

allegations that "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim.[110]   Thereafter, the Court must assume the truth of the well-pleaded factual allegations that remain "and then determine whether they plausibly give rise to an entitlement to relief."[111]   "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."[112]   This plausibility standard allows the Court to "'draw on [its] judicial experience and common sense" when evaluating the sufficiency of pleadings on a motion to dismiss.[113]

A federal court sitting in diversity must apply the substantive law of the forum state and the federal procedural law.[114]   Plaintiff has brought this matter in federal court based on diversity in citizenship,[115] and accordingly, substantive Utah law applies.In the instant matter and pursuant to Utah state law, Goodridge has failed to state a cognizable claim upon which relief may be granted with respect to his second, third, and fourth causes of action.   Accordingly, these three causes of action should all be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice.

   a.   _Goodridge has failed to state a claim for premises liability._

Goodridge's premises liability cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Goodridge has failed to plead facts that, if true, would entitle him to relief.   In Utah, "[a] possessor of land may be subject to liability for injuries to invitees caused by a condition

---

[110] _Id._ at 678.

[111] _Id._ at 679.

[112] _Khalik v. United Air Lines_, 671 F.3d 1188, 1191 (10th Cir. 2012).

[113] _Gerson v. Logan River Academy,_ 20 F.4th 1263, 1279–80 (10th Cir. 2021).

[114] _See Hanna v. Plumer_, 380 U.S. 460, 471–74 (1965); _Blanke v. Alexander_, 152 F.3d 1224, 1228 (10th Cir. 1998).

[115] Exhibit 1, Complaint, ¶ 5.

on the land" if certain conditions are met.[116]  Goodridge's premises liability claim fails to include

any allegation that a specific "condition on the land" existed or caused injury to Taylor.[117]  To the

contrary, the Complaint alleges Taylor's injuries and unfortunate death were a result of DRA's

failure to provide proper, timely, and adequate medical care to Taylor in response to multiple

instances of reported vomiting.[118]  This alleged failure to render medical care does not constitute

any "condition on the land" that would give rise to premises liability.[119]  Thus, this cause of action

should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

> ### b.  *The Complaint fails to state a cognizable claim for Inn Keeper Liability.*

Goodridge's third cause of action for Inn Keeper Liability should be dismissed for failure

to state a claim because Utah does not recognize Inn Keeper Liability as a cognizable cause of

action that would entitle Goodridge to relief.  While Utah's legislature enacted a short set of Hotel

Keepers' Liability statutes (codified as Utah Code Ann. § 29-1-1 through §29-1-3), these statutes

strictly provide protections "for loss of or injury to *personal property* placed in the person's care

by the person's guest."[120]  Utah's Hotel Keepers' Liability statutes do not enumerate any standards

of care or provisions concerning the health or welfare of guests or otherwise justify imposition of

liability that would not ordinarily exist under a traditional negligence claim, which Goodridge has

already pled in his Fifth Claim for Relief.[121]

---

[116] *Zazzetti v. Prestige Senior Living Ctr. LLC*, 2022 UT App 42, ¶22, 509 P.3d 776 (emphasis added).
[117] Exhibit 1, Complaint, ¶¶ 48-52.
[118] *See id.* ¶¶ 20-38, 69.
[119] *Zazzetti*, 2022 UT App 42, ¶22.
[120] *See* Utah Code Ann. § 29-1-3(1) (emphasis added).
[121] Exhibit 1, Complaint, ¶¶ 64-72.

Moreover, Goodridge's Inn Keeper Liability claim is premised upon his misstatement of the standard of care that is generally owed by innkeepers.  The Complaint alleges "DRA was acting as an Innkeeper of Taylor Goodrich and as such, owed duties of care for her safety."[122]  However, the Utah Supreme Court has held "an innkeeper is not an insurer of the safety of its guests but owes to them ordinary care to see that the premises assigned to them are reasonably safe for their use and occupancy.[123]  Again, this ordinary duty of care exists under a traditional negligence theory of relief.  Thus, the third cause of action for Inn Keeper Liability is not a cognizable cause of action and, in substance, it is duplicative of his fifth cause of action for negligence.  Accordingly, this claim should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

      c.   *The Complaint fails state a cognizable claim for Child Abuse.*

The Complaint's fourth cause of action for Child Abuse should be dismissed for failure to state a claim because general Child Abuse is not a cognizable cause of action for *civil* liability under Utah law.  Indeed, Utah courts admittedly recognize a civil claim for child *sexual* abuse if "intentional or negligent sexual abuse" is inflicted on a child.[124]  However, the Complaint does not allege *sexual* abuse; rather, this cause of action is entirely premised upon DRA's alleged failure to provide medical care to Taylor.[125]  Neither Utah's legislature nor its courts have recognized Child Abuse as a cognizable claim for *civil* liability outside of the sexual abuse context.  Rather, criminal liability and restitution for general child abuse must be sought by the State of Utah.[126]

---

[122] *Id.* ¶ 54.
[123] *Mitchell v. Pearson Enterprises*, 697 P.2d 240, 243 (Utah 1985) (emphasis added).
[124] *See* Utah Code Ann. §78B-2-308(3).
[125] *See* Exhibit 1, Complaint, ¶ 61.
[126] *See* Utah Code Ann. § 76-5-109.

Within Goodridge's fourth cause of action for Child Abuse, Goodridge cites to Utah Code Ann. § 80-2a-201(2) for his proposition that "[i]t is the public policy of Utah 'that children have the right to protection from abuse and neglect," thereby implying this statute creates a civil cause of action for Child Abuse.[127]  But Section 80-2a-201(2) does not create a cognizable civil claim for "Child Abuse."  Rather, this Section reiterates the State of Utah's sole right to "prosecute" and "punish abuse and neglect" criminally against children as follows:

> "It is also the public policy of this state that children have the right to protection from abuse and neglect, and that *the state retains a compelling interest in investigating, prosecuting, and punishing abuse and neglect*. Therefore, the state, as parens patriae, has an interest in and responsibility to protect a child whose parent abuses the child or does not adequately provide for the child's welfare. There may be circumstances where a parent's conduct or condition is a substantial departure from the norm and the parent is unable or unwilling to render safe and proper parental care and protection. Under those circumstances, the state may take action for the welfare and protection of the parent's child."[128]

This interpretation is buttressed by the fact that Title 80 is Utah's Juvenile Code, Chapter 2A pertains to the Removal and Protective Custody of a Child by the State, and Part 2 pertains to Warrants and Removal.  Further, Section 80-2a-201—which Goodridge specifically cites as the legal authority for his Child Abuse cause of action—is entitled "Rights of parents—Children's rights—Interest and responsibility of state."[129]  Nothing within the referenced title, chapter, part, or statute creates a stand-alone cognizable *civil* cause of action for Child Abuse. Accordingly, Goodridge's fourth cause of action for "Child Abuse" should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

---

[127] Exhibit 1, Complaint, ¶ 60 (referencing Utah Code Ann. § 80-2a-201(2)).
[128] Utah Code Ann. § 80-2a-201(2).
[129] Utah Code Ann. § 80-2a-201.

25

## <u>CONCLUSION</u>

This Court should dismiss Goodridge's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Goodridge failed to comply with the Malpractice Act's notice and pre-litigation DOPL review provisions *prior* to commencing litigation.  In the alternative, this Court should stay the litigation pending completion of the DOPL review process.  Moreover and substantively, this Court should dismiss Goodridge's second, third, and fourth causes of action with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because Goodridge has failed to allege facts that, if true, would entitle him to relief.

DRA respectfully requests that this matter be set for a hearing and oral argument.

DATED this 10th day of March, 2023.

GOEBEL ANDERSON PC

*/s/ Samantha E. Wilcox*
Heidi G. Goebel
Samantha E. Wilcox
*Attorneys for Defendant, Diamond Ranch Academy, Inc.*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of March, 2023, I caused a true and correct copy of

the foregoing **RULE 12b MOTION TO DISMISS** to be filed and served with the Court

electronically, and by email on all parties of record as follows:

Alan W. Mortensen
Lance L. Milne
Christopher J. Cheney
MORTENSEN & MILNE
68 S. Main Street, Floor 7
Salt Lake City, UT 84101
amort@mortmilnelaw.com
lmilne@ mortmilnelaw.com
ccheney@ mortmilnelaw.com

*/s/ Samantha E. Wilcox*