Alan W. Mortensen (6616)
Lance L. Milne (14879)
Christopher J. Cheney (15572)
MORTENSEN & MILNE
68 South Main, Suite 700
Salt Lake City, Utah 84101
Telephone: (801) 521-4444
amort@mortmilnelaw.com
lmilne@mortmilnelaw.com
ccheney@mortmilnelaw.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DEAN JEFFRIES L. GOODRIDGE, Individually as the Natural Father and as Personal Representative of the Estate of TAYLOR GOODRIDGE, Deceased, and AMBERLYNN WIGTION, Individually as the Natural Mother of TAYLOR GOODRIDGE, Deceased<br><br>Plaintiffs,<br><br>v.<br><br>DIAMOND RANCH ACADEMY, INC.; a corporation, BIG SPRINGS PROPERTIES, LLC BIG SPRINGS PROPERTIES<br><br>Defendant. | **SECOND AMENDED COMPLAINT**<br><br>Case No. 4:22-cv-000102-DN |

Plaintiffs Dean Goodridge and Amberlynn Wigtion, individually and as the natural parent, heir and personal representative of Taylor Goodridge, a deceased minor, by and through their counsel of record, MORTENSEN & MILNE, hereby complain of Diamond Ranch Academy and alleges the following:

## PARTIES

1. Respondent Diamond Ranch Academy is a Utah corporation that provides in-patient treatment for youths located on a 55-acre campus in Washington County, Utah.

2. Taylor Goodridge, a deceased minor child, resided in Hurricane, Utah, at the time of her death, but was a citizen of Washington and was domiciled there.

3. Taylor Goodridge is the daughter of the Plaintiffs Dean Goodridge, who is a resident of the state of Washington.  Plaintiffs brings this action individually and on behalf of all the heirs of Taylor Goodridge and on behalf of the estate of Taylor Goodridge.  Taylor Goodridge is the daughter of the Plaintiffs Amberlynn Wigtion, who is a resident of the state of Arkansas.

4. Diamond Ranch Academy ("DRA") is a Utah corporation with its principal place of business in Hurricane, Utah.

5. Defendant Big Springs Properties is the property owner of the premises where the DRA is located.

## JURISDICTION

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Plaintiffs are in the process of complying with Utah Code Annotated, §§ 78B-3-401, *et seq*., in order to bring an action against Diamond Ranch Academy pursuant to the Utah Health Care Malpractice Act and the complaint will be amended once that process is complied with.

## GENERAL ALLEGATIONS OF FACT

8. DRA is a residential treatment center and therapeutic boarding school in Hurricane, Utah, for troubled youth between the ages of 12 and 18.

9. DRA holds itself out as "an industry leader in helping youth realize their potential." It represents that its students "become their best selves in a structured elite private school environment with a personalized therapeutic approach" and promises that "[t]he challenges you are facing with your child today do not need to limit the possibilities of tomorrow."

10. DRA employs, among others, licensed physicians, and healthcare providers.

11. DRA's theme is "Healing Families One Youth at a Time."

12. DRA invites parents, including Native American parents, to bring their children who are struggling with emotional and addiction issues, for treatment and care.

13. The DRA Parent Manual states in part: "Our program is proven effective – **and we guarantee it** – when the program is followed closely and when the parents support it completely."

14. The DRA Parent Manual further states: "We recognize how difficult a decision it was to intervene on your child's behalf. We also recognize how difficult it is to place the care of your child in the hands of another. *Please take comfort in knowing that we take our responsibility very seriously.*"

15. DRA promises parents to "treat every student as if they were our own daughter or son."

16. DRA promises parents that students will be allowed to ensure for their basic health needs, such as requesting appointments with on and offsite providers, addressing medical concerns with professionals and that the medical staff would attend to their needs onsite as if they were in their family medical practice.

17. Given these representations and promises, Plaintiff's minor daughter, Taylor Goodridge, was matriculated into the DRA program, removed from her home in the State of Washington, and was physically placed into the DRA program where she became a resident for several months.

18. Unbeknownst to Plaintiffs, despite DRA's assurances, representations and promises, children that become ill at DRA are often ignored or told that they are faking their illnesses. Many claim that they are given aspirin and water and told to "suck it up."

19. Taylor Goodridge was placed and kept in DRA with no due process rights, a conviction in a legal court that justifies her presence there, with no ability to call her parents (or any other person), while Taylor's parents were kept in the dark about her health and well-being as all communications in and out of DRA were controlled by DRA, who had a huge profit motive to keep Taylor there as long as possible.

20. Taylor entered DRA in very good health and was an athlete, competing on the DRA volleyball and cheerleading teams.

21. Upon information, beginning in December 2022, Taylor began to experience abdominal pain.

22. On December 6, 2022, Taylor's scheduled Zoom call with her parents was cancelled by DRA based upon alleged behavioral issues.

23. On December 13, 2022, Taylor was vomiting and reported such to DRA.

24. On December 13, 2022, Taylor's scheduled Zoom call with her parents was cancelled by DRA based upon health issues.

25. On December 15, 2022, Taylor was vomiting and reported such to DRA.

26. On December 16, 2022, Taylor was ruled ineligible for incentives, akin to a punishment.

27. The pain became so excruciating that Taylor was begging the DRA staff for help.

28. At one point in time, Taylor collapsed in her vomit.

29. Taylor continued to beg for help, these complaints were ignored by the staff at DRA.

30. DRA staff told her that she was faking it and needed to "suck it up."

31. Taylor's stomach became extremely distended and was noticeable to others.

32. Taylor was in excruciating pain, but all the DRA staff did was tell her to drink water and take aspirin.

33. On December 17, 2022, Taylor was vomiting and reported such to DRA.

34. On December 19, 2022, Taylor refused to go to lunch because she was too sick and expressed anger to the DRA's "Recovery" Squad, for DRA's staff's failures to help her while being sick "lately."

35. On December 20, 2022, DRA's Recovery squad was called again, because Taylor was too sick to get up. The Recovery Squad forced Taylor to get up, shower and go to breakfast.

36. Because the Recovery Squad was dealing with other students, they told her she had to either go to class or to medical.

37. Taylor had no ability to call her parents, or anyone else, and ask them to call for an ambulance, Uber, or Taxi, or to walk off the premises.

38. Taylor went to medical after breakfast on December 20, 2022 and was vomiting.

39. On December 20, 2022, Taylor collapsed and died in medical.

40. DRA called her father and told him that Taylor had suffered a heart attack and was taken to the hospital.

41. DRA then called her father and told him she had perished at the hospital from a heart attack.

42. Unbeknownst to the Plaintiff Goodridge, upon information and belief, Taylor was dead before she had left DRA.

43. Upon information and belief, Taylor died of sepsis related to her several days of complaints to the staff.

## FIRST CLAIM FOR RELIEF v. ALL DEFENDANTS
*(False Imprisonment)*

44. Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

45. DRA was willful detaining Taylor, without her consent and without the authority of any Court order or law.

46. DRA's imprisonment was false and manifested a knowing and reckless indifference toward and a disregard of the rights of Taylor Goodridge and the Plaintiffss.

47. As a direct and proximate result of DRA's false imprisonment of Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services, and support of their daughter; and the permanent destruction of their family unit.

48. As a direct and proximate result of DRA's false imprisonment, Taylor suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

### SECOND CLAIM FOR RELIEF v. ALL DEFENDANTS
*(Premises Liability)*

49. Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

50. Taylor Goodridge was a business invitee upon DRA's premises and was owed duties of care by DRA to care for her well-being.

51. DRA in failing to treat Taylor, punishing her for complaining, withholding medical care, and restricting all communications with her parents and the outside world, violated the duties owed to Taylor.

52. As a direct and proximate result of DRA's failure to provide a safe premises for Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services, and support of their daughter; and the permanent destruction of their family unitAs a direct and

proximate result of DRA's failure to provide a safe premises for Taylor, she suffered severe physical pain, discomfort, loss of enjoyment of life and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

## THIRD CLAIM FOR RELIEF v. ALL DEFENDANTS
*(Innkeeper Liability)*

53. Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

54. DRA was acting as an Innkeeper of Taylor Goodrich and as such, owed duties of care for her safety.

55. DRA in failing to treat Taylor, punishing her for complaining, withholding medical care, and restricting all communications with her parents and the outside world, violated the duties owed to Taylor.

56. As a direct and proximate result of DRA's failure to act as a proper innkeeper to Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services, and support of their daughter; and the permanent destruction of their family unit.

57. As a direct and proximate result of DRA's failure to act as a proper innkeeper to Taylor, she suffered severe physical pain, discomfort, loss of enjoyment of life and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

## FOURTH CLAIM FOR RELIEF v. ALL DEFENDANTS
*(Child Abuse)*

58. Plaintiffs incorporates the previous paragraphs as if fully set forth herein.

59. DRA was acting in *loco parentis* and had a special legal relationship with Taylor Goodridge.

60. It is the public policy of Utah "that children have the right to protection from abuse and neglect." Utah Code Ann. 80-2a-201(2).

61. DRA in failing to treat Taylor, punishing her for complaining, withholding medical care, and restricting all communications with her parents and the outside world, committed child abuse upon Taylor.

62. As a direct and proximate result of DRA's child abuse of Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services, and support of their daughter; and the permanent destruction of their family unit.

63. As a direct and proximate result of DRA's child abuse, Taylor suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

## FIFTH CLAIM FOR RELIEF v. ALL DEFENDANTS
*(Negligence/Knowing and Reckless Indifference)*

64. Plaintiffs incorporates the previous paragraphs as if fully set forth herein.

9

65. DRA was acting in *loco parentis* and had a special legal relationship with Taylor Goodridge.

66. DRA had a duty to exercise responsible care in the treatment and supervision of Taylor Goodridge.

67. DRA knew that Taylor Goodridge was suffering from extreme pain in her abdominal area.

68. DRA breached the duty that it owed to Taylor Goodridge and the Plaintiffs, thereby creating a substantial risk of, and in fact causing, serious bodily injury and death to Taylor Goodridge.

69. DRA's breaches of duty included, among other things:

   a. Failing to provide Taylor Goodridge with adequate supervision and care;

   b. Failing to provide and/or follow policies and procedures related to supervision and care of Taylor Goodridge;

   c. Failing to properly assess, document, and treat Taylor Goodridge's health condition;

   d. Failing to appropriately train staff; and

   e. Not acting immediately to seek medical treatment for Taylor Goodridge but instead putting its public relations ahead of Taylor Goodridge's life.

70. DRA's acts and omissions manifested a knowing and reckless indifference toward and a disregard of the rights of others, including Taylor Goodridge and the Plaintiffs.

71. As a direct and proximate result of DRA's acts and omissions, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter,

causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services, and support of their daughter; and the permanent destruction of their family unit.

72. As a direct and proximate result of DRA's acts and omissions, Taylor suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

### SIXTH CLAIM FOR RELIEF v. DRA
*(Breach of Fiduciary Duty)*

73. Plaintiffs incorporates the previous paragraphs as if fully set forth herein.

74. DRA owed a fiduciary duty to Plaintiffs his daughter.

75. DRA breached the fiduciary duty it owed to Plaintiffs and his daughter in failing to provide proper medical care to Taylor.

76. As a direct and proximate result of DRA's acts and omissions, Plaintiffs and other heirs have suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

77. As a direct and proximate result of DRA's acts and omissions, Taylor Goodridge suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor Goodridge's untimely death and have incurred funeral and burial expenses as a result of her death.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for judgment against Defendant, DRA, as follows:

1. For general damages in an amount to be proved at trial;

2. For special damages in an amount to be proved at trial;

3. For punitive damages in an amount sufficient to punish DRA and to deter DRA and others in similar situations from engaging in such conduct in the future; and

4. For such other costs, expenses, attorney's fees, and other relief the Court finds appropriate under the circumstances.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury.

DATED this ___ day of April 2023.

        MORTENSEN & MILNE

        */s/ Alan W. Mortensen*
        Alan W. Mortensen
        Lance L. Milne
        Christopher J. Cheney
        *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April ___, 2023, I caused a true and correct copy of the foregoing FIRST AMENDED COMPLAINT to be filed with the Court electronically, and by email on all parties of record as follows:

    Heidi Goebel
    GOEBEL ANDERSON PC
    405 South Main Street, Suite 200
    Salt Lake City, UT 84111
    HGoebel@GAPClaw.com

                                                /s/ Natalie Cottam