Heidi G. Goebel (10343)
Samantha E. Wilcox (15284)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, UT 84111
Telephone: 801.441.9393
HGoebel@gapclaw.com
SWilcox@gapclaw.com
*Attorneys for Defendant Diamond Ranch Academy, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| DEAN JEFFRIES L. GOODRIDGE, Individually and as Personal Representative of the Estate of TAYLOR GOODRIDGE, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>DIAMOND RANCH ACADEMY, INC., a corporation,<br><br>Defendant. | **DIAMOND RANCH ACADEMY'S REPLY IN SUPPORT OF ITS RULE 12(b) MOTION TO DISMISS**<br><br>Case No. 4:22-CV-00102-DN<br><br>District Judge David Nuffer<br><br>**(Hearing Requested)** |

Defendant Diamond Ranch Academy, Inc. ("DRA"), by and through its counsel of record, respectfully submits this Reply Memorandum in Support of its Rule 12(b) Motion to Dismiss.[1]

## ARGUMENT

I. **Goodridge's Complaint Must be Dismissed In Entirety Because Goodridge Failed to Comply with Utah's Malpractice Act.**

Goodridge's Complaint must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Goodridge did not comply with the requirements set forth in

---

[1] Rule 12(b) Motion to Dismiss, March 10, 2023, Dkt. No. 14.

1

Utah's Malpractice Act prior to commencing suit.² Notably, Goodridge does not dispute that DRA qualifies as a healthcare provider under the Malpractice Act; that Goodridge failed to comply with the Malpractice Act's notice requirements prior to commencing suit; and that Goodridge failed to complete the DOPL prelitigation review process prior to commencing litigation. Rather, Goodridge opposes dismissal of his Complaint based on his sole contention that his claims are not "medical malpractice claims" that are subject to the Act. This position should be rejected.

Goodridge cites to only one case in support of his position that his claims fall outside of the purview of the Act—*Shell v. Intermountain Health Services Inc.*,³ a case in which the Utah Court of Appeals reversed Rule 12(b)(1) dismissal of a Jason Shell's ("Shell") claim against Intermountain Health Services ("IHC") based on its conclusion that "Shell did not receive health care as defined within the Act," and as such, "Shell was not required to comply with the Act's pre-litigation requirements" prior to commencing suit.⁴ The facts giving rise to Shell's claim, however, are easily distinguishable from the facts giving rise to Goodridge's instant claims.

More specifically, *Shell* arose after Shell voluntarily "sought medical attention at IHC" for mental health treatment.⁵ Upon arrival, a "staff member [] escorted Shell to an examination room" and then a social worker "'advised that he must take a sedative to 'get some rest.'"⁶ When Shell requested "alternative treatment," the "social worker replied 'that he could either take the sedative or leave'" the premises without receiving any care; Shell "opted to leave" and declined care.⁷

---

² *See* Utah Code Ann. § 78B-3-401, *et seq*.
³ *Shell v. Intermountain Health Services Inc.*, 2022 UT App 70, 513 P.3d 104.
⁴ *Id.* ¶ 24.
⁵ *Id.* ¶ 2.
⁶ *Id.*
⁷ *Id.*¶¶ 2–3 (emphasis added)

Shortly thereafter, IHC's security guard "locked the door" to "the only public exit."[8] Shell then asked to call for someone to pick him up because he "wanted to leave," but the "staff refused" this request.[9] Immediately thereafter, a second security guard, Ete, "quickly approached Shell in a hostile manner and block[ed] Shell from leaving."[10] Next, Ete "quickly grabbed Shell by the shoulders, dragged Shell across the lobby, . . . slammed Shell against the wall," "forced Shell to the ground with his hands around Shell's neck," and repeatedly "lifted Shell up and slammed him back into the ground."[11] After Shell "start[ed] bleeding from his mouth and the back of his head," Ete "forced his body weight on Shell's throat for 20 seconds, making Shell unable to . . . breathe."[12] Thereafter, Ete "dragged Shell out of [IHC]," during which all of Shell's clothing came off completely, and pinned Shell's exposed body to the ground outside of IHC for more than 15 minutes before law enforcement arrived.[13]

A year later, Shell filed suit against Ete and IHC and alleged causes of action for battery, assault, false imprisonment, and other causes of action.[14] IHC moved to dismiss Shell's Complaint based on Shell's failure to follow the Act's pre-litigation requirements before filing a claim in district court.[15] The district court granted IHC's motion based on its conclusion that, among other things, "the alleged torts relate[d] to, or arose from, Shell's health care treatment," and thus, Shell was required to comply with the Act's pre-litigation requirements prior to filing suit.[16]

---

[8] *Id.* ¶ 3.
[9] *Id.* ¶ 3–4.
[10] *Id.* ¶ 4.
[11] *Id.* ¶¶ 4–6.
[12] *Id.* ¶ 6 (omission in original) (quotation simplified).
[13] *Id.* ¶ 7.
[14] *Id.* ¶ 8.
[15] *Id.* ¶ 9.
[16] *Id.* ¶ 11 (quotation simplified).

On appeal, the Utah Court of Appeals reversed based on its conclusion that the Act did not apply because the alleged tortious conduct did not occur "during the patient's medical care, treatment, or confinement."[17] Rather, the Court noted that despite the fact that Shell initially "sought treatment," "Shell never actually received 'health care' after he arrived at [IHC]" and had affirmatively declined medical care at the time when Ete assaulted him.[18] To the contrary, "the social worker and Shell were looking for a way to contact Shell's girlfriend so that he could leave [IHC]" when the assault occurred.[19] It further stated, "Shell's act of seeking medical care does not equate to health care under the Act because nothing was done for Shell on his behalf by IHC's staff," and accordingly, the Act did not apply to his claims.[20]

In attempting to analogize the subject facts to *Shell*, Goodridge represents in his Opposition that "Shell presented to a health care facility and sought treatment . . . *The facility refused to provide treatment*, and Shell was injured in an ensuing altercation."[21] As explained above, this representation is inaccurate. Rather, Shell presented to IHC for care, *Shell refused the treatment offered, no treatment was ever rendered, and Shell was actively trying to leave* when Ete's physical assault of Shell ensued.[22] This distinction is important given that the holding in *Shell* was entirely premised on this entire lack of medical or evaluation care being rendered.

In the instant matter, and unlike *Shell*, Taylors unfortunate passing undisputedly occurred *during* her active participation in DRA's residential in-patient treatment program and is alleged to

---

[17] *Id.* ¶¶ 15, 17.
[18] *Id.* ¶ 19.
[19] *Id.* ¶¶ 22–23.
[20] *Id.* ¶ 23.
[21] Memorandum Opposing Rule 12(b) Motion to Dismiss ("Opposition"), April 21, 2023, Dkt. No. 23, at 3 (emphasis added).
[22] *Shell*, 2022 UT App 70, ¶¶ 2–11.

have occurred due to DRA's mismanagement of her care, specifically while in the medical department of DRA. Because the allegations are that DRA "perform[ed] or should have performed an act or treatment for, to, or on behalf of [Taylor] during [Taylor]'s medical care, treatment, or confinement," at DRA, the Malpractice Act applies.[23] Unlike the circumstances in *Shell*, Goodridge's Complaint undisputedly alleges that (1) DRA had rendered "several months" of medical care to Taylor during her residency in DRA's in-patient treatment program prior to the subject events[24]; (2) Taylor was actively residing at DRA and taking part in DRA's in-patient treatment program on the date of her passing[25]; (3) after Taylor reported symptoms of illness, DRA evaluated her and determined that she was either "faking it" or that her symptoms only required minimal treatment in the form of additional hydration and aspirin[26]; (4) on the date of Taylor's passing, "Taylor went to [DRA']s medical" facility for purposes of seeking treatment for her illness[27]; (5) while in medical, Taylor either received inadequate medical care from DRA or failed to receive any care whatsoever[28]; and (6) Taylor died of sepsis related to her several days of ignored complaints to the staff of DRA.[29] The result in *Shell* is distinguishable because Shell's injuries arose from a physical assault and battery that had no relation to medical care rendered, whereas Goodridge's damages and injuries directly arose from allegations that DRA failed to provide adequate medical care to Taylor when she was being treated by the facility.

---

[23] *Id.* ¶ 45 (quotation simplified).
[24] Second Amended Complaint, April 26, 2023, Dkt. No. 24, ¶¶ 8–10, 17, 21.
[25] *Id.* ¶¶ 8-21.
[26] *Id.* ¶¶ 30–32.
[27] *Id.* ¶¶38–39.
[28] Id.
[29] *Id.* ¶¶ 21–43.

Goodridge argues that his claims fall outside of the purview of the Malpractice Act simply because his "theory of the case" is that DRA "*failed to render* appropriate medical care and treatment to Taylor."[30] But to adopt such reasoning and conclude that Goodridge's claims fall outside the purview of the Malpractice Act would require the Court ignore and nullify unambiguous provisions of the Act that specifically pertain to a failure to render medical care. Indeed, the Act does not strictly apply to circumstances arising from affirmative medical care being rendered. To the contrary, pursuant to Utah Code Ann. § 78B-3-403(18), the Act also specifically applies to "alleged personal injuries relating out of health care . . . which *should* have been rendered by a health care provider" but was not actually rendered. When a health care provider "should have performed an act or treatment" to its patient but fails to do so, the Malpractice Act applies.[31] Accordingly, Goodridge's theory that DRA failed to render appropriate medical care and treatment to Taylor requires this Court to conclude that the Malpractice Act and its pre-litigation procedural requirements apply to Goodridge's claims, and Goodridge's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

II. **<u>Goodridge's Child Abuse Claim Must be Dismissed.</u>**

Goodridge's Child Abuse claim should be dismissed for failure to state a claim because general Child Abuse is not a cognizable civil cause of action under Utah law. Indeed, within his Opposition, Goodridge fails to cite to any statute, caselaw, or other legal authority to support his entitlement to maintain a standalone civil cause of action for Child Abuse. Rather, Goodridge merely argues that "[r]egardless of the name of the claim, Plaintiff has alleged that DRA owed

---

[30] Opposition, April 21, 2023, Dkt. No. 23, at 4 (emphasis in original).
[31] *Scott v. Windgate Wilderness Therapy*, 2021 UT 28, ¶ 45, 493 P.3d 592 (quotation simplified).

duties to Taylor Goodridge and that those duties were breached,"[32] Goodridge fails to explain, however, how these general and conclusory allegations regarding duty and breach support a legally recognized claim for relief that is distinct from his fourth cause of action for Negligence.

Notably, Goodridge alleges that "DRA exalts form over substance,"[33] but the actual "substance" of Goodridge's Child Abuse claim as set forth in the Complaint (rather than counsel's argument in Goodridge's Opposition) does not include any allegations whatsoever regarding duty or breach. To be clear, Goodridge alleges that his Child Abuse claim should not be dismissed because "DRA owed duties to Taylor Goodridge and those duties were breached,"[34] but the Child Abuse cause of action as plead does not contain a single factual allegation regarding duty or breach; rather, these allegations of alleged within Plaintiff's negligence claim. Moreover, the alleged damages pertaining to these two claims (Taylor's death) is also identical. Thus, Goodridge has no legal basis to maintain a Child Abuse claim against DRA, and Goodridge's Child Abuse cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**III.     The Complaint fails to state a cognizable claim for Inn Keeper Liability.**

Goodridge's third cause of action for Inn Keeper Liability should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim because Utah does not recognize "Inn Keeper Liability" as a cognizable claim relief that is separate and distinct from Goodridge's Negligence cause of action. Goodridge does not dispute that Utah's Hotel Keepers' Liability statutes do not enumerate any standards of care or provisions concerning the health or welfare of guests or otherwise create a standalone cause of action for Inn Keeper Liability that would not ordinarily

---

[32] Opposition, April 21, 2023, Dkt. No. 23, at 9–10.
[33] *Id.* at 9.
[34] *Id.* at 9-10.

7

exist under a traditional negligence claim. Rather, Goodridge only simplistically contends that "that innkeepers owe duties of care to their guests and can be liable when those duties are breached."[35] While this generalization of the law may be true, any associated liability must be brought through a traditional negligence or premises liability claim—not a separate standalone claim for "Inn Keeper Liability."

All the legal authority cited by Goodridge in his Opposition supports dismissal of his Inn Keeper Liability cause of action. For example, Goodridge cites to *Licari v. Best W. Int'l, Inc.* for holding that "[u]nder Utah law, an innkeeper owes her guests a duty of reasonable care as to the safety of the premises."[36] Goodridge fails to inform this Court, however, that this holding relates to the issue of duty as it pertains to "causes of action for negligence, vicarious liability, and loss of consortium"—not Inn Keeper Liability.[37] Thus, *Licari* supports the conclusion that the alleged duty and breach supports and gives rise to a Negligence claim and not Inn Keeper Liability.

Similarly, Goodridge cites to *Moore v. James*—a case in which the Utah Supreme Court evaluated the issue of duty as it pertained to a breach of the implied warranty claim—not an "Inn Keeper Liability" claim."[38] Substantively, in that case, the court affirmed "the long established doctrine that the duty of the innkeeper is to keep his hotel premises in a reasonably safe condition for his guests and that he must exercise reasonable care to protect his guests from personal injury," but clarified that an innkeeper's duty does *"not to make the innkeeper an insurer of his guests'*

---

[35] Opposition, April 21, 2023, Dkt. No. 23, at 8.
[36] *Licari v. Best W. Int'l, Inc.*, No. 2:11-CV-603, 2013 WL 3716523, at *3 (D. Utah July 12, 2013)
[37] *Id.*
[38] *Moore v. James*, 297 P.2d 221, 223 (Utah 1956).

*safety.*"[39] This suggests that Utah's appellate courts would decline the invitation to impose a separate and distinct liability for Inn Keeper Liability when a Negligence cause of action is contemporaneously maintained.

Goodridge fails to explain how his claim for Inn Keeper Liability is in any way distinct or different from his basic negligence claim. Goodridge does not even articulate the *prima facie* elements for his Inn Keeper Liability claim—likely because such a claim does not exist in Utah. Rather, Goodridge merely provides the general argument that DRA "owed duties to Taylor that were breached," and posits that "the precise name of the claim or the description of the duty of care are of no moment [sic] and do not warrant dismissal."[40] DRA must know what duty was allegedly owed and how that duty was allegedly breached in order to mount any type of a defense. At most, Goodridge's general allegations regarding duty and breach give rise to a basic negligence claim, which Goodridge is already asserting. Thus, Goodridge's Inn Keeper Liability claim should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

IV. **Goodridge has failed to state a claim for premises liability.**

Goodridge's premises liability cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Goodridge has failed to plead facts that concern "obviously harmful conditions or activities on the property."[41] In opposing dismissal, Goodridge implicitly concedes that he has not plead any facts regarding any "harmful conditions" at DRA and only opposes dismissal based on his contention that DRA engaged in "harmful activities" that allegedly occurred on DRA's premises. Those alleged "harmful activities," however, are not *affirmative* actions that could

---

[39] *Id.* (emphasis added).
[40] Opposition, April 21, 2023, Dkt. No. 23, at 9.
[41] *Hale v. Beckstead*, 2005 UT 24, ¶ 25, 116 P.3d 263.

9

constitute actual "activity." Rather, the alleged "activities" are more accurately characterized as a *lack of* activity or a failure to engage in activity given that the alleged "activities" are premised on DRA allegedly "failing to treat Taylor" and "withholding medical care."[42] This *lack* of activity does not give rise to liability for premises liability under Utah law.

Indeed, the only case cited by Goodridge in his Opposition—*Hale v. Beckstead*—as well as all the cases cited in support of MUJI 2nd CV1102 (which Goodridge also cited to in his Opposition) all pertain to dangerous conditions, as opposed to "activities" that existed on a premises. While some of the cases may arguably also pertain to "activities on the property," the activities all relate back to a dangerous condition on the land that also contemporaneously existed. More specifically, *Hale* concerns injuries sustained from a fall from an "unprotected balcony"[43]; *Porter* concerns injuries sustained from a fall "into a concealed hole" on cemetery grounds[44]; *Jex* concerns injuries "from [a] slip and fall accident"[45]; *Barrett* concerns injuries sustained when the plaintiff "fell into [a] manhole" in a parking lot[46]; *Gonzalez* concerns injuries sustained by an employee's contact with an energized power line on a construction site[47]; *Carlile* concerns injuries "sustained when a third-party cart driver collided with patron" in a store parking lot[48]; *Canfield* concerns injuries "arising out of a patron's slipping on lettuce leave in produce department grocery store"[49]; and *Glenn* concerns damages resulting from a dangerously large and unstable gravel pit.[50]

---

[42] Second Am. Complaint, Dkt. No. 24, ¶ 51; Opposition, Dkt. No. 23, at 6.
[43] *Hale v. Beckstead*, 2005 UT 24, 116 P.3d 263.
[44] *Porter v. Farmington City Corp.*, 2014 UT App 12, 318 P.3d 1198.
[45] *Jex v. JRA, Inc.*, 2008 UT 67, 196 P.2d 576.
[46] *Barrett v. Albertsons Inc.*, 2012 UT App 371, 293 P.3d 1108.
[47] *Gonzalez v. Russell Sorensen Const.*, 2012 UT App 154, 279 P.3d 422.
[48] *Carlile v. Wal-Mart*, 2002 UT App 412, 61 P.3d 287.
[49] *Canfield v. Albertsons, Inc.*, 8441 P.2d 1224 (Utah Ct. App. 1992).
[50] *Glenn v. Gibbons & Reed Co.*, 265 P.2d 1013 (Utah 1954).

Goodridge has failed to cite to a single case or other legal authority in support of his contention that an alleged *failure* to act (as opposed to an affirmative activity) can give rise to a premise liability claim. Moreover, Goodridge has failed to cite to a single case or other legal authority to support his creative notion that a premises liability claim can exist without any dangerous condition existing on a premises. Thus, this cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## **CONCLUSION**

This Court should dismiss Goodridge's Second Amended Complaint (and any subsequent amendments) in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Goodridge failed to comply with the Malpractice Act's notice and pre-litigation DOPL review provisions *prior* to commencing litigation. In the alternative, this Court should stay the litigation pending completion of the DOPL review process. Moreover and substantively, this Court should dismiss Goodridge's second, third, and fourth causes of action with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because Goodridge has failed to allege facts that, even if true, would entitle him to relief.

DRA respectfully requests that this matter be set for a hearing and oral argument.

DATED this 12th day of May, 2023.

GOEBEL ANDERSON PC

*/s/ Samantha E. Wilcox*
Heidi G. Goebel
Samantha E. Wilcox
*Attorneys for Defendant Diamond Ranch Academy, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May, 2023, a true and correct copy of the foregoing **DIAMOND RANCH ACADEMY'S REPLY IN SUPPORT OF RULE 12(b) MOTION TO DISMISS** was served via electronic case filing system (ECFS), which sent notification of such filing to the following:

    Alan W. Mortensen
    Lance L. Milne
    Christopher J. Cheney
    Joshua S. Ostler
    MORTENSEN & MILNE
    68 S. Main Street, Floor 7
    Salt Lake City, UT 84101
    amort@mortmilnelaw.com
    lmilne@mortmilnelaw.com
    ccheney@mortmilnelaw.com
    jostler@mortmilnelaw.com

                                                */s/ Samantha E. Wilcox*