# Exhibit A

DEPARTMENT OF COMMERCE
Heber M. Wells Building
160 East 300 South, Box 146741
Salt Lake City, Utah 84114-6741
Telephone: (801) 530-6945 or (801) 530-6225

BEFORE THE DIVISION OF PROFESSIONAL LICENSING
DEPARTMENT OF COMMERCE, STATE OF UTAH

PR23-01-0002

**DEAN JEFFRIES L. GOODRIDGE,**
**Individually and as Personal Representative**
**of the Estate of TAYLOR GOODRIDGE,**
**Deceased,**

      Petitioner(s),

-v-

ISSUANCE OF PRE-LITIGATION
PANEL OPINION AND CERTIFICATE
OF COMPLIANCE

**DIAMOND RANCH ACADEMY, INC.; a**
**corporation,**

      Respondent(s),

The Pre-litigation Panel Opinion rendered by the Pre-litigation Panel and filed with the Division in the above referenced case is hereby issued by the Division together with a Certificate of Compliance this 11th day of July, 2023.

Dated this 11th day of July, 2023.



_Tracy Naff_
Tracy Naff
Prelitigation Manager

DEPARTMENT OF COMMERCE
Heber M. Wells Building
160 East 300 South, Box 146741
Salt Lake City, Utah 84114-6741
Telephone: (801) 530-6945 or (801) 530-6225

BEFORE THE DIVISION OF PROFESSIONAL LICENSING
DEPARTMENT OF COMMERCE, STATE OF UTAH

---

PR23-01-0002

**DEAN JEFFRIES L. GOODRIDGE,**
**Individually and as Personal Representative**
**of the Estate of TAYLOR GOODRIDGE,**
**Deceased,**

Petitioner(s),

-v-                                        CERTIFICATE OF COMPLIANCE

**DIAMOND RANCH ACADEMY, INC.; a**
**corporation,**

Respondent(s),

---

I, Tracy Naff, Prelitigation Manager, Division of Professional Licensing, Department of Commerce, hereby certify that the requirements set forth in §78B-3-418(1)(2), Utah Code Ann., 1953 as amended, have been satisfied regarding prelitigation review of the above-entitled matter.

Dated this 11th day of July, 2023.



_Tracy Naff_
Tracy Naff
Prelitigation Manager

**PETITIONER:**

**IF YOU FILE AN ACTION IN COURT, YOU MUST NOTIFY THE DIVISION IN WRITING AND IDENTIFY THE RESPONDENTS INCLUDED IN THAT ACTION.**

*(Utah Code Ann. § 78B-3-423(8))*

<u>PROOF OF SERVICE</u>

I hereby certify that I have this 11th day of July, 2023, served the foregoing CERTIFICATE OF COMPLIANCE on all parties of record in this proceeding by mailing a copy, regular mail, properly addressed, with postage prepaid, or emailed to:

Christopher J. Cheney
MORTENSEN & MILNE
68 S Main Street Floor 7
Salt Lake City, UT 84101
ccheney@mortmilnelaw.com

Lance L Milne
MORTENSEN & MILNE
68 S Main Street Floor 7
Salt Lake City, UT 84101
lmilne@mortmilnelaw.com

Alan  W. Mortensen
MORTENSEN & MILNE
68 S Main Street Floor 7
Salt Lake City, UT 84101
amort@mortmilnelaw.com ncottam@mortmilnelaw.com

Timothy J Curtis
Goebel Anderson PC
405 South Main Street Suite 200
Salt Lake City, UT 84111
Tcurtis@gapclaw.com

Heidi  G. Goebel
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, UT 84111
HGoebel@gapclaw.com

Samantha E. Wilcox
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, UT 84111
SWilcox@gapclaw.com

Rosalie Lindsay-Guimaraes
GORDON REES SCULLY MANSUKHANI, LLP
15 W South Temple St. Suite 1600
Salt Lake City, UT 84101
rlindsay@grsm.com

Mark A Nickel
Gordon Rees Sculy Mansukhani, LLP
15 W South Temple St. Suite 1600
Salt Lake City, UT 84101
mnickel@grsm.com

Michael  J Collins
Rencher Anjewierden PLLC
460 S 400 E
Salt Lake City, UT 84111
mike.collins@lawfirmra.com

Jaryl L Rencher
RENCHER|ANJEWIERDEN
460 S 400 E
Salt Lake City, UT 84111
rencher@lawfirmra.com jane@lawfirmra.com

*TN*

Prelitigation

DEPARTMENT OF COMMERCE
Heber M. Wells Building
160 East 300 South, Box 146741
Salt Lake City, UT 84114-6741
Telephone: (801) 530-6990

BEFORE THE DIVISION OF PROFESSIONAL LICENSING

DEPARTMENT OF COMMERCE, STATE OF UTAH

| | |
|---|---|
| DEAN JEFFRIES L. GOODRIDGE, Individually and as Personal Representative of the Estate of TAYLOR GOODRIDGE, Deceased, <br><br> Petitioner, <br><br> vs. <br><br> DIAMOND RANCH ACADEMY, INC.; DANNY WORWOOD, M.D.; BROOKS WILEY, FPMHNP-BC; CAMERON HUGHES, RN; and JOHN DOES 1-10, <br><br> Respondents. | Case No. PR23-01-0002 <br><br> **NOTICE OF PANEL DECISION** |

A Prelitigation Panel hearing was held in the above-titled matter on July 10, 2023. Panel members were: Jon Worthen, RN; Allyson Taylor, APRN; Laura Min Hae Anderson, MD, family practice physician; Lisa Westlind, lay member; and Brian Craig, chairperson. Alan W. Mortensen represented Petitioner. Heidi Goebel represented Respondents Diamond Ranch Academy, Inc., Brooks Wiley, and Cameron Hughes. Cami Schiel represented Respondent Danny Worwood.

1

The Panel reviewed the notice of intent, records, testimony, and the proffer of evidence by counsel. After reviewing the evidence, the members of the Panel unanimously found that each of the Respondents breached the standard of care causing harm to Petitioner. Therefore, the claims are meritorious.

**FINDINGS OF FACT**

1. Petitioner Dean Goodridge matriculated his minor daughter, Taylor Goodridge, at Diamond Ranch Academy on October 27, 2021. Diamond Ranch Academy is a residential treatment facility for adolescents. Taylor, born on July 15, 2005, was 16 years old at the time of her admission at Diamond Ranch Academy. Taylor's home state is Washington. Taylor was a cheerleader before her admission to Diamond Ranch Academy and generally in good health.

2. Before her admission to Diamond Ranch Academy, Taylor had a history of substance abuse. Taylor also had a history of behavioral issues and making false statements.

3. Taylor's tribe paid for Taylor's $12,000 monthly tuition at Diamond Ranch Academy.

4. Other students at Diamond Ranch Academy apparently experienced a stomach virus in December 2022.

5. On December 9, 2022, Taylor reported back pain and difficulty in breathing.

6. Taylor starting vomiting on December 12, 2022 or December 13, 2022. Taylor was seen by medical staff on December 13, 2022. Taylor had an elevated heart rate. Taylor was seen by either Brooks Wiley, a psychiatric nurse practitioner, or Cameron Hughes, a registered nurse.

7. Taylor continued to repeatedly vomit over the next week between December 13, 2022 and December 20, 2022. Staff members and other students at Diamond Ranch Academy noted that Taylor appeared ill with pale skin. Taylor had an elevated heart rate and low blood pressure. Taylor requested going to the hospital.

8. Medical staff at Diamond Ranch Academy did not draw any blood of Taylor between December 13, 2022 and December 19, 2022. No lab work was completed. Taylor was not taken to an urgent care center or hospital. Taylor was not seen by a physician.

9. There was a phone call on December 14, 2022 between Taylor's parents sand a staff member of Diamond Ranch Academy. Taylor did not talk with her parents on December 14, 2022 on the phone because apparently she was too sick.

10. Taylor was not taken to a hospital. Taylor was not seen by a physician between December 13, 2022 and December 20, 2022.

11. Dr. Danny Worwood is the medical director at Diamond Ranch. Dr. Worwood is contracted to come in every two weeks. Dr. Worwood last saw Taylor in February 2022. Dr. Worwood was scheduled to see Taylor on December 21, 2022.

12. Taylor's stomach became distended which other individuals at Diamond Ranch Academy noticed.

13. Brooks Wiley signed a medical note on December 20, 2022 at 10:19 AM. The medical note showed Taylor had symptoms associated with GI started a week ago with ill appearance. Blood was drawn on December 20, 2022, but Taylor died on December 20, 2022 before the lab results came back. Taylor died on December 20, 2022 at age 17.

**CONCLUSIONS OF LAW**

1.. Each of the Respondents breached the standard of care causing harm to Petitioner. Therefore, the claims are meritorious.

**OPINION OF PANEL**

The Panel members unanimously found serious concerns with the care and treatment provided by Diamond Ranch Academy and the other Respondents. Diamond Ranch Academy

breached the standard of care in several ways. The medical center at Diamond Ranch Academy is not properly staffed. Brooks Wiley is a psychiatric nurse practitioner and not qualified to work in an urgent care, ER, or family practice setting. Brooks Wiley was working beyond the scope of his license. Taylor had seven days of vomiting. Taylor's temperature was elevated. Her blood pressure was low. The Panel members concluded these symptoms called for more care by seeing a physician, going to an urgent care clinic or hospital, and having blood drawn before December 20, 2022. Vomiting for seven days is very concerning. There was sufficient physical evidence of symptoms for other care beyond a viral GI condition or faking symptoms. As an volleyball player and young person in good physical condition, an elevated heart rate combined with vomiting is concern enough to call a doctor or go to the hospital. Paleness in the skin cannot be faked. Diamond Ranch Academy also breached the standard of care by not allowing or encouraging weekly phone calls between Taylor and her parents. All of the policies and procedures at the facility need to be reviewed externally.

The medical records were also not properly documented, including the records maintained by Cameron Hughes and Brooks Wiley. It was unclear whether Cameron Hughes or Brooks Wiley actually saw Taylor between December 13, 2022 and December 20, 2022. The breaches in the standard of care of not properly documenting records or communicating with a physician led to the unfortunate death of Taylor.

Panel members also found Dr. Worwood breached the standard of care. While Dr. Worwood did not actually receive any communication about Taylor's condition, Dr. Worwood, as medical director, is responsible for the facility's medical care. Dr. Worwood, with the title of medical director, is responsible for the facility's policies and procedures. As stated above, the medical center at Diamond Ranch Academy is not properly staffed and the policies breach the

standard of care. Going to the facility every two weeks is not hands-on enough for a medical director.

This was a tragic death of an otherwise healthy adolescent that likely could have been avoided. The Panel members expressed hope that the State will investigate Diamond Ranch Academy to protect. Panel members also expressed concerns over the entire industry with residential treatment facilities for adolescents.

**CONCLUSION**

In summary, the Panel unanimously found that each of the Respondents breached the standard of care causing harm to Petitioner. Therefore, the claims are MERITORIOUS.


Dated: July 10, 2023

/s/ Brian Craig

Brian Craig, Chairperson

DEPARTMENT OF COMMERCE
Heber M. Wells Building
160 East 300 South, Box 146741
Salt Lake City, Utah 84114-6741
Telephone:  (801) 530-6990

BEFORE THE DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING
DEPARTMENT OF COMMERCE, STATE OF UTAH

---

**DEAN JEFFRIES L. GOODRIDGE, Individually**
**and as Personal Representative of the Estate of**
**TAYLOR GOODRIDGE, Deceased**

Petitioner(s),                                    Case No. PR23-01-0002

-v-                                               NOTIFICATION OF PANEL
                                                  OPINION
DIAMOND RANCH ACADEMY INC.
              Respondent(s).

---

The above-entitled matter came on for hearing on the 10ᵗʰ day of July 2023, before, prelitigation panel members Brian Craig, Lisa Westlind, Laura Anderson, M.D., Allyson Taylor, APRN, and Jon Worthen, RN; all designated in that regard pursuant to section 78B-3-416, Utah Code Ann. (1953), as amended, and the rules of procedure promulgated relative thereto.

As to the Respondent, the panel has determined that:
(1) ☒ The Respondent breached the applicable standard of care.
        The Respondent's breach of the standard of care ☒ **did** or ☐ **did not** result in harm to Petitioner.
(2) ☐ The Respondent **did not** breach the applicable standard of care.

Based upon the above, the panel finds the claims as set forth in the request for prelitigation review is ☒ **MERITORIOUS** or ☐ **NON-MERITORIOUS**.

Dated this 10ᵗʰ day of July 2023.

|  | MERITORIOUS | NON-MERITORIOUS |
|---|:---:|:---:|
| *Brian Craig* | ☒ | ☐ |
| Brian Craig | | |
| *Lisa Westlind* | ☒ | ☐ |
| Lisa Westlind | | |
| *Allyson Taylor* | ☒ | ☐ |
| Allyson Taylor, APRN | | |
| *[signature]* | ☒ | ☐ |
| Jon Worthen, RN | | |

DEPARTMENT OF COMMERCE
Heber M. Wells Building
160 East 300 South, Box 146741
Salt Lake City, Utah 84114-6741
Telephone: (801) 530-6990

BEFORE THE DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING
DEPARTMENT OF COMMERCE, STATE OF UTAH

**DEAN JEFFRIES L. GOODRIDGE, Individually
and as Personal Representative of the Estate of
TAYLOR GOODRIDGE, Deceased**

Petitioner(s),

Case No. PR23-01-0002

-v-

NOTIFICATION OF PANEL
OPINION

CAMERON HUGHES

Respondent(s).

The above-entitled matter came on for hearing on the 10th day of July 2023, before, prelitigation panel members Brian Craig, Lisa Westlind, Laura Anderson, M.D., Allyson Taylor, APRN, and Jon Worthen, RN; all designated in that regard pursuant to section 78B-3-416, Utah Code Ann. (1953), as amended, and the rules of procedure promulgated relative thereto.

As to the Respondent, the panel has determined that:
(1) ☒  The Respondent breached the applicable standard of care.
    The Respondent's breach of the standard of care ☒ **did** or ☐ **did not** result in harm to Petitioner.
(2) ☐  The Respondent **did not** breach the applicable standard of care.

Based upon the above, the panel finds the claims as set forth in the request for prelitigation review is ☒ **MERITORIOUS** or ☐ **NON-MERITORIOUS**.

Dated this 10th day of July 2023.

|  | MERITORIOUS | NON-MERITORIOUS |
|---|---|---|
| *Brian Craig* | ☒ | ☐ |
| Brian Craig | | |
| *Lisa Westlind* | ☒ | ☐ |
| Lisa Westlind | | |
| *[signature]* | ☒ | ☐ |
| Jon Worthen, RN | | |

DEPARTMENT OF COMMERCE
Heber M. Wells Building
160 East 300 South, Box 146741
Salt Lake City, Utah 84114-6741
Telephone:  (801) 530-6990

BEFORE THE DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING
DEPARTMENT OF COMMERCE, STATE OF UTAH

**DEAN JEFFRIES L. GOODRIDGE, Individually**
**and as Personal Representative of the Estate of**
**TAYLOR GOODRIDGE, Deceased**

        Petitioner(s),                    Case No. PR23-01-0002

-v-                                   NOTIFICATION OF PANEL
BROOKS WILEY, FPNHNP-BC          OPINION

        Respondent(s).

The above-entitled matter came on for hearing on the 10th day of July 2023, before, prelitigation panel members Brian Craig, Lisa Westlind, Laura Anderson, M.D., Allyson Taylor, APRN,  and Jon Worthen, RN; all designated in that regard pursuant to section 78B-3-416, Utah Code Ann. (1953), as amended, and the rules of procedure promulgated relative thereto.

As to the Respondent, the panel has determined that:
(1) ☒   The Respondent breached the applicable standard of care.
      The Respondent's breach of the standard of care ☒ **did** or ☐ **did not** result
      in harm to Petitioner.
(2) ☐   The Respondent **did not** breach the applicable standard of care.

Based upon the above, the panel finds the claims as set forth in the request for prelitigation review is ☒ **MERITORIOUS** or ☐ **NON-MERITORIOUS**.

Dated this 10th day of July 2023.

|  | MERITORIOUS | NON-MERITORIOUS |
|---|:---:|:---:|
| *Brian Craig* | ☒ | ☐ |
| Brian Craig | | |
| *Lisa Westlind* | ☒ | ☐ |
| Lisa Westlind | | |
| *Allyson Taylor* | ☒ | ☐ |
| Allyson Taylor, APRN | | |
| *Jon* | ☒ | ☐ |
| Jon Worthen, RN | | |

DEPARTMENT OF COMMERCE
Heber M. Wells Building
160 East 300 South, Box 146741
Salt Lake City, Utah 84114-6741
Telephone: (801) 530-6990

BEFORE THE DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING
DEPARTMENT OF COMMERCE, STATE OF UTAH

**DEAN JEFFRIES L. GOODRIDGE, Individually**
**and as Personal Representative of the Estate of**
**TAYLOR GOODRIDGE, Deceased**

        Petitioner(s),                Case No. PR23-01-0002

-v-                                 NOTIFICATION OF PANEL
DANNY WORWOOD, M.D.             OPINION

        Respondent(s).

The above-entitled matter came on for hearing on the 10th day of July 2023, before, prelitigation panel members Brian Craig, Lisa Westlind, Laura Anderson, M.D., Allyson Taylor, APRN, and Jon Worthen, RN; all designated in that regard pursuant to section 78B-3-416, Utah Code Ann. (1953), as amended, and the rules of procedure promulgated relative thereto.

As to the Respondent, the panel has determined that:
(1) ☒ The Respondent breached the applicable standard of care.
      The Respondent's breach of the standard of care ☒ **did** or ☐ **did not** result in harm to Petitioner.
(2) ☐ The Respondent **did not** breach the applicable standard of care.

Based upon the above, the panel finds the claims as set forth in the request for prelitigation review is ☒ **MERITORIOUS** or ☐ **NON-MERITORIOUS**.

Dated this 10th day of July 2023.

|  | MERITORIOUS | NON-MERITORIOUS |
|---|---|---|
| *Brian Craig* <br> Brian Craig | ☒ | ☐ |
| *Lisa Westlind* <br> Lisa Westlind | ☒ | ☐ |
| *JL* <br> Laura Anderson, M.D. | ☒ | ☐ |

# Exhibit B

Alan W. Mortensen (6616)
Lance L. Milne (14879)
Christopher J. Cheney (15572)
Joshua S. Ostler (14277)
MORTENSEN & MILNE
68 South Main, Suite 700
Salt Lake City, Utah 84101
Telephone: (801) 521-4444
amort@mortmilnelaw.com
lmilne@mortmilnelaw.com
ccheney@mortmilnelaw.com
jostler@mortmilnelaw.com
*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| DEAN JEFFRIES L. GOODRIDGE, Individually and as the Natural Father and as Personal Representative of the Estate of TAYLOR GOODRIDGE, Deceased, and AMBERLYNN WIGTION, Individually and as the Natural Mother of TAYLOR GOODRIDGE, Deceased<br><br>        Plaintiffs,<br><br>v.<br><br>DIAMOND RANCH ACADEMY, INC. a Utah corporation; BIG SPRINGS PROPERTIES, LLC, a Utah limited liability company;  DANNY WORWOOD, M.D., a resident of Utah; BROOKS WILEY, FPMHNP-BC, a resident of Utah; and CAMERON HUGHES, R.N., a resident of Utah,<br><br>        Defendants. | **PLAINTIFFS' PROPOSED FOURTH AMENDED COMPLAINT**<br><br>Case No. 4:22-cv-000102-DN |

Plaintiffs Dean Goodridge and AmberLynn Wigtion, individually and as the natural parents, heirs, and personal representative of Taylor Goodridge, a deceased minor, by and through their counsel of record, MORTENSEN & MILNE, hereby complain of Diamond Ranch Academy and Big Springs Properties, LLC and allege the following:

## PARTIES

1.      Defendant Diamond Ranch Academy is a Utah corporation that provides in-patient treatment for youths located on a 55-acre campus in Washington County, Utah.

2.      Taylor Goodridge, a deceased minor child, resided in Hurricane, Utah, at the time of her death, but was a citizen of Washington and was domiciled there.

3.      Taylor Goodridge is the daughter of the Plaintiffs Dean Goodridge and AmberLynn Wigtion, who are residents of the states of Washington and Arkansas, respectively. Plaintiffs bring this action individually and on behalf of all the heirs of Taylor Goodridge and on behalf of the estate of Taylor Goodridge.

4.      Diamond Ranch Academy ("DRA") is a Utah corporation with its principal place of business in Hurricane, Utah. DRA's principals are Robbie Delon Dias and Sherri Dias, who are residents of Hurricane, Utah.

5.      Defendant Big Springs Properties, LLC ("Big Springs Properties") is the property owner of the premises where the DRA is located.  It is a Utah Limited Liability Company with its principal place of business in Hurricane, Utah, whose sole principal is listed as Robbie Delon Dias, who is likewise a Utah resident located in Hurricane, Utah.

6.      Defendant Danny Worwood, M.D. ("Worwood") is the medical director of DRA and is a family practitioner licensed to practice medicine in the State of Utah.  Worwood is a resident of the State of Utah.

7.      Defendant Brooks Wiley ("Wiley") is a psychiatric nurse practitioner, licensed by the State of Utah.  Wiley is a resident of the State of Utah.

8.      Defendant Cameron Hughes, R.N. ("Hughes") is a registered nurse, licensed by the State of Utah.  Hughes is a resident of the State of Utah.

## JURISDICTION

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Plaintiffs has complied with Utah Code Annotated, §§ 78B-3-401, *et seq*., in order to bring medical malpractice actions against Defendant Diamond Ranch Academy and Defendants Worwood, Wiley, and Hughes pursuant to the Utah Health Care Malpractice Act.

## GENERAL ALLEGATIONS OF FACT

11.     DRA is a residential treatment center and therapeutic boarding school in Hurricane, Utah, for troubled youth between the ages of 12 and 18.

12.     DRA holds itself out as "an industry leader in helping youth realize their potential."  It represents that its students "become their best selves in a structured elite private school environment with a personalized therapeutic approach" and promises that "[t]he challenges you are facing with your child today do not need to limit the possibilities of tomorrow."

3

13.     DRA employs, among others, licensed physicians, and healthcare providers.

14.     DRA's theme is "Healing Families One Youth at a Time."

15.     DRA invites parents, including Native American parents, to bring their children who are struggling with emotional and addiction issues, for treatment and care.

16.     The DRA Parent Manual states in part: "Our program is proven effective – **and we guarantee it** – when the program is followed closely and when the parents support it completely."

17.     The DRA Parent Manual further states: "We recognize how difficult a decision it was to intervene on your child's behalf. We also recognize how difficult it is to place the care of your child in the hands of another. *Please take comfort in knowing that we take our responsibility very seriously.*"

18.     DRA promises parents to "treat every student as if they were our own daughter or son."

19.     DRA promises parents that students will be allowed to ensure for their basic health needs, such as requesting appointments with on and offsite providers, addressing medical concerns with professionals and that the medical staff would attend to their needs onsite as if they were in their family medical practice.

20.     Defendant Worwood was at all applicable times the medical director of DRA.

21.     Defendant Wiley was at all applicable times assisting in the medical clinic at DRA.

22.     Defendant Hughes was at all applicable times assisting in the medical clinic at DRA.

23.     Given these representations and promises, Plaintiff's minor daughter, Taylor Goodridge, was matriculated into the DRA program, removed from her home in the State of Washington, and was physically placed into the DRA program where she became a resident for several months.

24.     Unbeknownst to Plaintiffs, despite DRA's assurances, representations, and promises, children that become ill at DRA are often ignored or told that they are faking their illnesses.  Many claim that they are given aspirin and water and told to "suck it up."

25.     The medical director Worwood would only come to DRA once every two weeks. If a child needed care at any time during his two-week absence from the premises, DRA staff was left to determine how to deal with medical problems that arose with the children.

26.     Taylor Goodridge was placed and kept in DRA in October of 2021, with no due process rights, no conviction in a legal court that justified her presence there, with no ability to call her parents (or any other person), while Taylor's parents were kept in the dark about her health and well-being as all communications in and out of DRA were controlled by DRA, who had a huge profit motive of over $12,000 a month to keep Taylor there as long as possible.

27.     Taylor entered DRA in very good health and was an athlete, competing on the DRA volleyball and cheerleading teams.

28.     Upon information, beginning in December 2022, Taylor began to experience abdominal pain.

29.     On December 6, 2022, Taylor's scheduled Zoom call with her parents was cancelled by DRA based upon alleged behavioral issues.

30.     On December 9, 2022, Taylor reported to medical staff back pain and difficulty in breathing.

31.     Taylor started vomiting on December 12, 2022.

32.     Taylor was seen by either Defendant Wiley or Defendant Hughes on December 13, 2022.  She presented with an elevated heart rate and verified reports of vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility.  No blood work was done on her.

33.     On December 13, 2022, Taylor continued to vomit.  The entire staff and administration were aware of the vomiting as it was documented on a "Medical Pass-It-On" card that is emailed out to all staff and administration.

34.     On December 14, 2022, Taylor had a scheduled weekly phone call with her parents, which was cancelled due to Taylor being "sick for a couple of days."

35.     On December 14, 2022, Taylor was still vomiting which was verified by DRA staff.  DRA provided no medical care to Taylor on December 14, 2022.

36.     On December 15, 2022, Taylor continued to vomit.  The entire staff and administration were aware of the vomiting as it was documented on a "Medical Pass-It-On" card that is emailed out to all staff and administration.

37.     Taylor was seen by either Defendant Wiley or Defendant Hughes on December 15, 2022, for her vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility.  No blood work was done on her.

38.     On December 16, 2022, Taylor continued to vomit, but she was provided no medical care by DRA.

39.     On December 17, 2022, Taylor continued to vomit.  The entire staff and administration were aware of the vomiting as it was documented on a "Medical Pass-It-On" card that is emailed out to all staff and administration.

40.     One of Taylor's supervisors was concerned and texted her supervisor and reported "Sorry to bug you about this but I am worried about Taylor G.  She has been sick for at least a week. She hasn't kept food down.  She has been throwing up she is really weak and pale.  I haven't seen her like this when I worked here before.  Honestly if she was my kid I would take her to the hospital or at least an instacare."

41.     Taylor was begging staff to take her to the hospital.

42.     Taylor was seen by either Defendant Wiley or Defendant Hughes on December 17, 2022, for her vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility.  No blood work was done on her.

43.     On December 18, 2022, Taylor was in significant pain and had been using a teddy bear that she would warm up in a microwave oven as a heating pad.  The bear had been lost and she asked for a heating pad.

44.     The staff at DRA refused her request for a heating pad.

45.     In response to the denial, another staff member reported to her supervisors that Taylor had been sick for a week and that "she does look pretty rough – Like very very skinny in the face area."

46.     She was again referred to the medical clinic where Taylor was seen by either Defendant Wiley or Defendant Hughes for her vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility.  No blood work was done on her.

47.     Taylor was begging staff to take her to the hospital, which requests were shut down by staff.

48.     At one point in time, Taylor collapsed in her vomit, but no assistance was given to her.

49.     On December 19, 2022, Taylor refused to go to lunch because she was too sick and expressed anger to the DRA's "Recovery" Squad, for DRA's staff's failures to help her while being sick "lately."

50.     On December 20, 2022, DRA's Recovery squad was called again, because Taylor was too sick to get up and was vomiting.  The Recovery Squad forced Taylor to get up, shower and go to breakfast.

51.     The entire staff and administration were aware of the vomiting as it was documented on a "Medical Pass-It-On" card that is emailed out to all staff and administration.

52.     Taylor was seen by either Defendant Wiley or Defendant Hughes on December 20, 2022, for her vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility.

53.     Blood was finally drawn and sent to a lab for testing at 1:10 pm.

54.     Taylor had no ability to call her parents, or anyone else, and ask them to call for an ambulance, Uber, or Taxi, or to walk off the premises.

55.     On December 20, 2022, Taylor collapsed at DRA .

56.     Finally, an ambulance was called to transport Taylor to the hospital.

57.     Upon arrival at DRA, the EMTs found that Taylor's abdomen was distended, her skin color was poor, and she was cold to the touch.

58.     Upon arrival at the Emergency Room, Taylor's was "noted to have a significantly distended abdomen."

59.     Taylor died of sepsis related to her several days of complaints to the staff and without ever being referred to a medical doctor or taken off site to a hospital or urgent care facility or without ever having blood drawn with results.

60.     After Taylor had been dead for several hours, her blood work came back from the lab showing that she had a dangerously high white blood cell count.

61.     In the 12-day period prior to Taylor's death, DRA documented that Taylor had vomited at least 14 times, with her vomiting at least 7 times in an 11-hour time frame.

62.     DRA called her father and told him that Taylor had suffered a heart attack and was taken to the hospital.

63.     DRA then called her father and told him she had perished at the hospital from a heart attack.

64.     Unbeknownst to the Plaintiff Goodridge, upon information and belief, Taylor was dead before she had left DRA.

65.     The autopsy performed on Taylor confirmed that she died of sepsis that originated from peritonitis.

66.     The sepsis caused necrosis in her lungs, heart, and liver.

## FIRST CLAIM FOR RELIEF
### *(False Imprisonment v. DRA)*

67.     Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

68.     DRA was willfully detaining Taylor, without her consent and without the authority of any Court order or law.

69.     DRA's imprisonment was false and manifested a knowing and reckless indifference toward and a disregard of the rights of Taylor Goodridge and the Plaintiffs.

70.     As a direct and proximate result of DRA's false imprisonment of Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

71.     As a direct and proximate result of DRA's false imprisonment, Taylor suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

## SECOND CLAIM FOR RELIEF v. ALL DEFENDANTS
### *(Premises Liability v. DRA and Big Springs Properties)*

72.     Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

73.     Taylor Goodridge was a business invitee upon DRA's and Big Springs Properties' premises and was owed duties of care by DRA and Big Springs Properties to care for her well-being.

74.     DRA and Big Springs Properties in failing to treat Taylor, punishing her for complaining, withholding medical care (even a heating pad), and restricting all communications with her parents and the outside world, violated the duties owed to Taylor.

75.     As a direct and proximate result of DRA's and Big Springs Properties' failure to provide a safe premises for Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit as a direct and proximate result of DRA's and Big Springs Properties' failure to provide a safe premises for Taylor, she suffered severe physical pain, discomfort, loss of enjoyment of life and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

### THIRD CLAIM FOR RELIEF
#### *(Innkeeper Liability v. DRA)*

76.     Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

77.     DRA was acting as an Innkeeper of Taylor Goodrich and as such, owed duties of care for her safety.

78.     DRA in failing to treat Taylor, punishing her for complaining, withholding medical care, and restricting all communications with her parents and the outside world, violated the duties owed to Taylor.

79.     As a direct and proximate result of DRA's failure to act as a proper innkeeper to Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the

care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

80.     As a direct and proximate result of DRA's failure to act as a proper innkeeper to Taylor, she suffered severe physical pain, discomfort, loss of enjoyment of life and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

## FOURTH CLAIM FOR RELIEF v. ALL DEFENDANTS
### *(Child Abuse)*

81.     Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

82.     DRA was acting in *loco parentis* and had a special legal relationship with Taylor Goodridge pursuant to common law and Utah Code Ann. § 80-1-102 (1)(50).

83.     The remaining defendants had a duty of care and protection to Taylor.

84.     It is the public policy of Utah "that children have the right to protection from abuse and neglect."  Utah Code Ann. 80-2a-201(2).

85.     A facility such as DRA is prohibited from using "cruel, severe, unusual, or unnecessary practice on a child, including abuse and neglect.  Utah Code Ann. § 62A-2-123(1)(o)-(p).

86.     Neglect as defined by Utah Statute means "action or inaction causing failure or refusal of … guardian or custodian to provide proper or necessary … medical care … necessary for the child's health, safety … or well-being."  Utah Code Ann. § 80-1-58(a)(iii).

87.     The Defendants, in failing to treat Taylor, punishing her for complaining, withholding medical care, and restricting all communications with her parents and the outside world, committed child neglect and abuse upon Taylor.

88.     As a direct and proximate result of defendants' child abuse of Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

89.     As a direct and proximate result of defendants' child abuse, Taylor suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

## FIFTH CLAIM FOR RELIEF v. ALL DEFENDANTS
### *(Negligence/Knowing and Reckless Indifference)*

90.     Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

91.     DRA was acting in *loco parentis* and had a special legal relationship with Taylor Goodridge.

92.     Defendants had a duty to exercise responsible care in the treatment and supervision of Taylor Goodridge.

93.     Defendants knew that Taylor Goodridge was suffering from extreme pain in her abdominal area.

94.     Defendants breached the duty that they owed to Taylor Goodridge and the Plaintiffs, thereby creating a substantial risk of, and in fact causing, serious bodily injury and death to Taylor Goodridge.

95.     Defendants' breaches of duty included, among other things:

a.      Failing to provide Taylor Goodridge with adequate supervision and care;

b.      Failing to provide and/or follow policies and procedures related to supervision and care of Taylor Goodridge;

c.      Failing to properly assess, document, and treat Taylor Goodridge's health condition;

d.      Failing to appropriately train staff;

e.      Failing to have proper medical policies and procedures; and

f.      Not acting immediately to seek medical treatment for Taylor Goodridge but instead putting its public relations ahead of Taylor Goodridge's life.

96.     Defendants' acts and omissions manifested a knowing and reckless indifference toward and a disregard of the rights of others, including Taylor Goodridge and the Plaintiffs.

97.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

98.     As a direct and proximate result of Defendants' acts and omissions, Taylor suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs

incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

## SIXTH CLAIM FOR RELIEF v. DRA
### *(Breach of Fiduciary Duty)*

99.     Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

100.    DRA owed a fiduciary duty to Plaintiffs' daughter and to Plaintiffs.

101.    DRA breached the fiduciary duty it owed to Plaintiffs and their daughter in failing to provide proper medical care to Taylor.

102.    As a direct and proximate result of DRA's acts and omissions, Plaintiffs and other heirs have suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

103.    As a direct and proximate result of DRA's acts and omissions, Taylor Goodridge suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor Goodridge's untimely death and have incurred funeral and burial expenses as a result of her death.

## SEVENTH CLAIM FOR RELIEF v. DRA
### *(Educational Negligence)*

104.    Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

105.    Defendant DRA owed duties to Taylor and her parents to care and provide for Taylor as part of her educational experience at DRA.

15

106.    DRA (through its staff) breached the duties it owed to Plaintiffs and their daughter in failing to provide proper educational care to Taylor, in fostering a culture of distrust and shame to DRA when reporting a child's illness, in failing to provide constant care from a family practitioner, and in failing to allow Taylor to talk to her parents on December 13, 2022 or at any time while she was ill.

107.    As a direct and proximate result of DRA's acts and omissions, Plaintiffs and other heirs have suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

108.    As a direct and proximate result of DRA's acts and omissions, Taylor Goodridge suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor Goodridge's untimely death and have incurred funeral and burial expenses as a result of her death.

## EIGHTH CLAIM FOR RELIEF v. DRA, WILEY AND HUGHES
### *(Medical Negligence)*

109.    Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

110.    To the extent that Defendant DRA can call itself a medical provider, and defendants actual medical providers Wiley and Hughes, all owed duties to Taylor and her parents to care and provide for Taylor as part of her boarding at DRA.

111.    Said defendants breached the duties they owed to Plaintiffs and their daughter in failing to provide proper medical care to Taylor:

      a.   In failing to refer Taylor to the medical director at DRA, Defendant Worwood;

16

b.  In failing to take Taylor to a hospital or urgent care center after presenting with abnormal vitals on December 9, 2022;

c.  In failing to draw blood during her visits to the medical clinic in the week proceeding Taylor's death;

d.  In failing to have proper policies and procedures to deal with health issues;

e.  In failing to properly document Taylor's illness;

f.  In having a psychiatric nurse practitioner staff an urgent care and family practice clinic at DRA;

g.  In working beyond the scope of their licenses; and

h.  Any other acts of negligence that discovery may reveal.

112.  As a direct and proximate result of DRA's, Wiley's, and Hughes' acts and omissions, Plaintiffs and other heirs have suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

113.  As a direct and proximate result of DRA's, Wiley's, and Hughes' acts and omissions, Taylor Goodridge suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor Goodridge's untimely death and have incurred funeral and burial expenses as a result of her death.

## NINTH CLAIM FOR RELIEF v. WORWOOD
### *(Medical Negligence)*

114.  Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

115. Defendant Worwood owed duties to Taylor and her parents to assure that proper medical care was provided to Taylor as part of her boarding at DRA.

116. Defendant Worwood breached the duties he owed to Plaintiffs and their daughter in the following respects:

a. In failing to have proper policies and procedures to deal with health issues;

b. In failing to properly staff DRA's family practice medical clinic;

c. In having a psychiatric nurse practitioner staff an urgent care and family practice clinic at DRA;

d. Any other acts of negligence that discovery may reveal.

117. As a direct and proximate result of Defendant Worwood's acts and omissions, Plaintiffs and other heirs have suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

118. As a direct and proximate result of Defendant Worwood's negligent acts and omissions, Taylor Goodridge suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor Goodridge's untimely death and have incurred funeral and burial expenses as a result of her death.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. For general damages in an amount to be proved at trial;

2. For special damages in an amount to be proved at trial;

18

3.  For punitive damages against DRA in an amount sufficient to punish DRA and to deter DRA and others in similar situations from engaging in such conduct in the future; and

4.  For such other costs, expenses, attorney's fees, and other relief the Court finds appropriate under the circumstances.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

DATED this 12th day of July, 2023.

MORTENSEN & MILNE

*/s/ Alan W. Mortensen*

Alan W. Mortensen
Lance L. Milne
Christopher J. Cheney
Joshua S. Ostler
*Attorneys for Plaintiffs*

19

# Exhibit C

Alan W. Mortensen (6616)
Lance L. Milne (14879)
Christopher J. Cheney (15572)
Joshua S. Ostler (14277)
MORTENSEN & MILNE
68 South Main, Suite 700
Salt Lake City, Utah 84101
Telephone: (801) 521-4444
amort@mortmilnelaw.com
lmilne@mortmilnelaw.com
ccheney@mortmilnelaw.com
jostler@mortmilnelaw.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DEAN JEFFRIES L. GOODRIDGE, Individually and as the Natural Father and as Personal Representative of the Estate of TAYLOR GOODRIDGE, Deceased, and AMBERLYNN WIGTION, Individually and as the Natural Mother of TAYLOR GOODRIDGE, Deceased<br><br>　　　　Plaintiffs,<br><br>v.<br><br>DIAMOND RANCH ACADEMY, INC.**,** a Utah corporation**; and** BIG SPRINGS PROPERTIES, LLC, a Utah limited liability company**; DANNY WORWOOD, M.D., a resident of Utah; BROOKS WILEY, FPMHNP-BC, a resident of Utah; and CAMERON HUGHES, R.N., a resident of Utah,**<br><br>　　　　Defendants. | **PLAINTIFFS' PROPOSED FOURTH** ~~**THIRD**~~ **AMENDED COMPLAINT**<br><br>Case No. 4:22-cv-000102-DN |

Plaintiffs Dean Goodridge and AmberLynn Wigtion, individually and as the natural parents, heirs, and personal representative of Taylor Goodridge, a deceased minor, by and through their counsel of record, MORTENSEN & MILNE, hereby complain of Diamond Ranch Academy and Big Springs Properties, LLC and allege the following:

**PARTIES**

1.      DefendantResponden t Diamond Ranch Academy is a Utah corporation that provides in-patient treatment for youths located on a 55-acre campus in Washington County, Utah.

2.      Taylor Goodridge, a deceased minor child, resided in Hurricane, Utah, at the time of her death, but was a citizen of Washington and was domiciled there.

3.      Taylor Goodridge is the daughter of the Plaintiffs Dean Goodridge and AmberLynn Wigtion, who are residents of the states of Washington and Arkansas, respectively. Plaintiffs bring this action individually and on behalf of all the heirs of Taylor Goodridge and on behalf of the estate of Taylor Goodridge.

4.      Diamond Ranch Academy ("DRA") is a Utah corporation with its principal place of business in Hurricane, Utah. DRA's principals are Robbie Delon Dias and Sherri Dias, who are residents of Hurricane, Utah.

5.      Defendant Big Springs Properties, LLC ("Big Springs Properties") is the property owner of the premises where the DRA is located.  It is a Utah Limited Liability Company with its principal place of business in Hurricane, Utah, whose sole principal is listed as Robbie Delon Dias, who is likewise a Utah resident located in Hurricane, Utah.

**Formatted:** Font:

2

6.      Defendant Danny Worwood, M.D. ("Worwood") is the medical director of DRA and is a family practitioner licensed to practice medicine in the State of Utah.  Worwood is a resident of the State of Utah.

7.      Defendant Brooks Wiley ("Wiley") is a psychiatric nurse practitioner, licensed by the State of Utah.  Wiley is a resident of the State of Utah.

5.8.      Defendant Cameron Hughes, R.N. ("Hughes") is a registered nurse, licensed by the State of Utah.  Hughes is a resident of the State of Utah.

**JURISDICTION**

6.9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.10.      Plaintiffs has are in the process of compliedying with Utah Code Annotated, §§ 78B-3-401, *et seq.*, in order to bring medical malpracticean actions against Defendant Diamond Ranch Academy and Defendants Worwood, Wiley, and Hughes, pursuant to the Utah Health Care Malpractice Act and the complaint will be amended once that process is complied with.

**GENERAL ALLEGATIONS OF FACT**

8.11.      DRA is a residential treatment center and therapeutic boarding school in Hurricane, Utah, for troubled youth between the ages of 12 and 18.

9.12.      DRA holds itself out as "an industry leader in helping youth realize their potential."  It represents that its students "become their best selves in a structured elite private school environment with a personalized therapeutic approach" and promises that "[t]he

3

challenges you are facing with your child today do not need to limit the possibilities of tomorrow."

10.13.  DRA employs, among others, licensed physicians, and healthcare providers.

11.14.  DRA's theme is "Healing Families One Youth at a Time."

12.15.  DRA invites parents, including Native American parents, to bring their children who are struggling with emotional and addiction issues, for treatment and care.

13.16.  The DRA Parent Manual states in part: "Our program is proven effective – **and we guarantee it** – when the program is followed closely and when the parents support it completely."

14.17.  The DRA Parent Manual further states: "We recognize how difficult a decision it was to intervene on your child's behalf. We also recognize how difficult it is to place the care of your child in the hands of another. *Please take comfort in knowing that we take our responsibility very seriously.*"

15.18.  DRA promises parents to "treat every student as if they were our own daughter or son."

19.  DRA promises parents that students will be allowed to ensure for their basic health needs, such as requesting appointments with on and offsite providers, addressing medical concerns with professionals and that the medical staff would attend to their needs onsite as if they were in their family medical practice.

20.  Defendant Worwood was at all applicable times the medical director of DRA.

21.  Defendant Wiley was at all applicable times assisting in the medical clinic at DRA.

4

16.22.  Defendant Hughes was at all applicable times assisting~~ed~~ in the medical clinic at DRA.

17.23.  Given these representations and promises, Plaintiff's minor daughter, Taylor Goodridge, was matriculated into the DRA program, removed from her home in the State of Washington, and was physically placed into the DRA program where she became a resident for several months.

24.    Unbeknownst to Plaintiffs, despite DRA's assurances, representations, and promises, children that become ill at DRA are often ignored or told that they are faking their illnesses.  Many claim that they are given aspirin and water and told to "suck it up."

18.25.  The medical director Worwood would only come to DRA once every two weeks. If a child needed care at any time during his two –week absence from the premises, DRA staff was left to determine how to deal with medical problems that arose with the children.

19.26.  Taylor Goodridge was placed and kept in DRA in October of 2021, with no due process rights, no~~a~~ conviction in a legal court that justifie~~ds~~ her presence there, with no ability to call her parents (or any other person), while Taylor's parents were kept in the dark about her health and well-being as all communications in and out of DRA were controlled by DRA, who had a huge profit motive of over $12,000 a month to keep Taylor there as long as possible.

20.27.  Taylor entered DRA in very good health and was an athlete, competing on the DRA volleyball and cheerleading teams.

21.28.  Upon information, beginning in December 2022, Taylor began to experience abdominal pain.

5

29.     On December 6, 2022, Taylor's scheduled Zoom call with her parents was cancelled by DRA based upon alleged behavioral issues.

30.     On December 9, 2022, Taylor reported to medical staff back pain and difficulty in breathing.

31.     Taylor started vomiting on December 12, 2022.

32.     Taylor was seen by either Defendant Wiley or Defendant Hughes on December 13, 2022.  She presented with an elevated heart rate and verified reports of vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility.  No blood work was done on her.

33.     On December 13, 2022, Taylor continued to vomit.  The entire staff and administration waswere aware of the vomiting as it was documented on a "Medical Pass-It-On" card that is emailed out to all staff and administration.

34.     On December 14, 2022, Taylor had a scheduled weekly phone call with her parents, which was cancelled dueto to Taylor being "sick for a couple of days."

35.     On December 14, 2022, Taylor was still vomiting which was verified by DRA staff.  DRA provided no medical care to Taylor on December 14, 2022.

36.     On December 15, 2022, Taylor continued to vomit.  The entire staff and administration were aware of the vomiting as it was documented on a "Medical Pass-It-On" card that is emailed out to all staff and administration.

37.     Taylor was seen by either Defendant Wiley or Defendant Hughes on December 15, 2022, for her vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility.  No blood work was done on her.

6

38.     On December 16, 2022, Taylor continued to vomit, but she was provided no medical care by DRA.

39.     On December 17, 2022, Taylor continued to vomit.  The entire staff and administration were aware of the vomiting as it was documented on a "Medical Pass-It-On" card that is emailed out to all staff and administration.

40.     One of Taylor's supervisors was concerned and texted her supervisor and reported "Sorry to bug you about this but I am worried about Taylor G.  She has been sick for at least a week.  She hasn't kept food down.  She has been throwing up she is really weak and pale.  I haven't seen her like this when I worked here before.  Honestly if she was my kid I would take her to the hospital or at least an instacare."

41.     Taylor was begging staff to take her to the hospital.

42.     Taylor was seen by either Defendant Wiley or Defendant Hughes on December 17, 2022, for her vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility.  No blood work was done on her.

43.     On December 18, 2022, Taylor was in significant pain and had been using a teddy bear that she would warm up in a microwave oven as a heating pad.  The bear had been lost and she asked for a heating pad.

44.     The staff at DRA refused her request for a heating pad.

45.     In response to the denial, another staff member reported to her supervisors that Taylor had been sick for a week and that "she does look pretty rough – Like very very skinny in the face area."

7

46. She was again referred to the medical clinic where Taylor was seen by either Defendant Wiley or Defendant Hughes for her vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility. No blood work was done on her.

22. Taylor was begging staff to take her to the hospital, which requests were shut down by staff.

23. On December 13, 2022, Taylor was vomiting and reported such to DRA.

24. On December 13, 2022, Taylor's scheduled Zoom call with her parents was cancelled by DRA based upon health issues.

25. On December 15, 2022, Taylor was vomiting and reported such to DRA.

26. On December 16, 2022, Taylor was ruled ineligible for incentives, akin to a punishment.

27.47. The pain became so excruciating that Taylor was begging the DRA staff for help.

28. At one point in time, Taylor collapsed in her vomit,.

29. Taylor continued to beg for help, these complaints were ignored by the staff at DRA.

30. DRA staff told her that she was faking it and needed to "suck it up."

31.48. Taylor's stomach became extremely distended and was noticeable to other but no assistance was given to her.s.

32. Taylor was in excruciating pain, but all the DRA staff did was tell her to drink water and take aspirin.

33. On December 17, 2022, Taylor was vomiting and reported such to DRA.

8

Formatted: Indent: Left: 0"

Formatted: Indent: Left: 0"

Formatted: No bullets or numbering

34.49. On December 19, 2022, Taylor refused to go to lunch because she was too sick and expressed anger to the DRA's "Recovery" Squad, for DRA's staff's failures to help her while being sick "lately."

50.    On December 20, 2022, DRA's Recovery squad was called again, because Taylor was too sick to get up and was vomiting.  The Recovery Squad forced Taylor to get up, shower and go to breakfast.

51.    The entire staff and administration were aware of the vomiting as it was documented on a "Medical Pass-It-On" card that is emailed out to all staff and administration.

52.    Taylor was seen by either Defendant Wiley or Defendant Hughes on December 20, 2022, for her vomiting, but she was not referred to a medical doctor or taken off site to a hospital or urgent care facility.

53.    Blood was finally drawn and sent to a lab for testing at 1:10 pm.

35.

36.    Because the Recovery Squad was dealing with other students, they told her she had to either go to class or to medical.

37.    Taylor had no ability to call her parents, or anyone else, and ask them to call for an ambulance, Uber, or Taxi, or to walk off the premises.

38.54.  Taylor went to medical after breakfast on December 20, 2022 and was vomiting.

39.55. On December 20, 2022, Taylor collapsed and died at DRA in medical.

40.1.  Finally, an ambulance was called DRA called her father and told him that Taylor had suffered a heart attack and was taken to the hospital.

9

**Formatted:** Indent: Left:  0"

41.1.   DRA then called her father and told him she had perished at the hospital from a heart attack.

56.   Unbeknownst to the Plaintiff Goodridge, upon information and belief, Taylor was dead before she had left DRAto transport Taylor to the hospital.

57.   Upon arrival at DRA, the EMTs found that Taylor's abdomen was distended, her skin color was poor, and she was cold to the touch.

42.58.   Upon arrival at the Emergency Room, Taylor's was "noted to have a significantly distended abdomen." .

59.   Upon information and belief, Taylor died of sepsis related to her several days of complaints to the staff and without ever being referred to a medical doctor or taken off site to a hospital or urgent care facility or without ever having blood drawn with results.

60.   After Taylor had been dead for several hours, her blood work came back from the lab showing that she had a dangerously high white blood cell count..

61.   In the 12-day period prior to Taylor's death, DRA documented that Taylor had vomited at least 14 times, with her vomiting at least 7 times in an 11 1 hour time frame.

62.   DRA called her father and told him that Taylor had suffered a heart attack and was taken to the hospital.

63.   DRA then called her father and told him she had perished at the hospital from a heart attack.

43.   Unbeknownst to the Plaintiff Goodridge, upon information and belief, Taylor was dead before she had left DRA.

10

64. \_\_\_\_

65.     The autopsy performed on Taylor confirmed that she died of sepsis that originated from peritonitis.

66.     The sepsis caused necrosis in her lungs, heart, and liver.

44.

**FIRST CLAIM FOR RELIEF v. ALL DEFENDANTS**
*(False Imprisonment v. DRA)*

÷

45.67.  Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

46.68.  DRA was willfully detaining Taylor, without her consent and without the authority of any Court order or law.

47.69.  DRA's imprisonment was false and manifested a knowing and reckless indifference toward and a disregard of the rights of Taylor Goodridge and the Plaintiffs.

48.70.  As a direct and proximate result of DRA's false imprisonment of Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish,; loss of the care, comfort, companionship, society, guidance, love, affection, association, services, and support of their daughter,; and the permanent destruction of their family unit.

49.71.  As a direct and proximate result of DRA's false imprisonment, Taylor suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

**SECOND CLAIM FOR RELIEF v. ALL DEFENDANTS**

11

*(Premises Liability v. DRA and Big Springs Properties)*

50.72.  Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

51.73.  Taylor Goodridge was a business invitee upon DRA's and Big Springs Properties' premises and was owed duties of care by DRA and Big Springs Properties to care for her well-being.

52.74.  DRA and Big Springs Properties in failing to treat Taylor, punishing her for complaining, withholding medical care (even a heating pad), and restricting all communications with her parents and the outside world, violated the duties owed to Taylor.

53.75.  As a direct and proximate result of DRA's and Big Springs Properties' failure to provide a safe premises for Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish,; loss of the care, comfort, companionship, society, guidance, love, affection, association, services, and support of their daughter,; and the permanent destruction of their family unit as a direct and proximate result of DRA's and Big Springs Properties'sProperties' failure to provide a safe premises for Taylor, she suffered severe physical pain, discomfort, loss of enjoyment of life and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

**THIRD CLAIM FOR RELIEF** v. ALL DEFENDANTS
*(Innkeeper Liability v. DRA)*

54.76.  Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

55.77.  DRA was acting as an Innkeeper of Taylor Goodrich and as such, owed duties of care for her safety.

12

~~56.~~78.  DRA in failing to treat Taylor, punishing her for complaining, withholding medical care, and restricting all communications with her parents and the outside world, violated the duties owed to Taylor.

~~57.~~79.  As a direct and proximate result of DRA's failure to act as a proper innkeeper to Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish~~,~~; loss of the care, comfort, companionship, society, guidance, love, affection, association, services~~,~~ and support of their daughter~~,~~; and the permanent destruction of their family unit.

~~58.~~  As a direct and proximate result of DRA's failure to act as a proper innkeeper to Taylor, she suffered severe physical pain, discomfort, loss of enjoyment of life and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

80.

**FOURTH CLAIM FOR RELIEF v. ALL DEFENDANTS**
*(Child Abuse)*

~~59.~~81. Plaintiffs ~~incorporates~~incorporate the previous paragraphs as if fully set forth herein.

82.  DRA was acting in *loco parentis* and had a special legal relationship with Taylor Goodridge pursuant to common law and Utah Code Ann. § 80-1-102 (1)(50).~~.~~

83.  The remaining defendants had a duty of care and protection to Taylor.

It is the public policy of Utah "that children have the right to protection from abuse and neglect." Utah Code Ann. 80-2a-201(2).

84.

85.     A facility such as DRA is prohibited from using "cruel, severe, unusual, or unnecessary practice on a child, including abuse and neglect.  Utah Code Ann. § 62A-2-123(1)(o). (p).

60.86. Neglect as defined by Utah Statute means "action or inaction causing failure or refusal of … guardian or custodian to provide proper or necessary … medical care … necessary for the child's health, safety … or well-being."  Utah Code Ann. § 80-1-58(a)(iii).

61.1.   The Defendants, It is the public policy of Utah "that children have the right to protection from abuse and neglect."  Utah Code Ann. 80-2a-201(2).

62.87. DRA in failing to treat Taylor, punishing her for complaining, withholding medical care, and restricting all communications with her parents and the outside world, committed child neglect and abuse upon Taylor.

63.88. As a direct and proximate result of defendants DRA's child abuse of Taylor, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services, and support of their daughter; and the permanent destruction of their family unit.

64.89. As a direct and proximate result of defendants DRA''s child abuse, Taylor suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

**FIFTH CLAIM FOR RELIEF v. ALL DEFENDANTS**

14

*(Negligence/Knowing and Reckless Indifference)*

65.90.  Plaintiffs incorporates the previous paragraphs as if fully set forth herein.

66.91.   DRA was acting in *loco parentis* and had a special legal relationship with Taylor Goodridge.

67.92.  DefendantsDRA had a duty to exercise responsible care in the treatment and supervision of Taylor Goodridge.

68.93.  DefendantsDRA knew that Taylor Goodridge was suffering from extreme pain in her abdominal area.

69.94.  DefendantsDRA breached the duty that theyit owed to Taylor Goodridge and the Plaintiffs, thereby creating a substantial risk of, and in fact causing, serious bodily injury and death to Taylor Goodridge.

70.95.  Defendants'DRA's breaches of duty included, among other things:

     a.     Failing to provide Taylor Goodridge with adequate supervision and care;

     b.     Failing to provide and/or follow policies and procedures related to supervision and care of Taylor Goodridge;

     c.     Failing to properly assess, document, and treat Taylor Goodridge's health condition;

     d.     Failing to appropriately train staff;

     d.e.     Failing to have proper medical policies and procedures; and

     e.f.     Not acting immediately to seek medical treatment for Taylor Goodridge but instead putting its public relations ahead of Taylor Goodridge's life.

15

71.96.  Defendants'DRA's acts and omissions manifested a knowing and reckless indifference toward and a disregard of the rights of others, including Taylor Goodridge and the Plaintiffs.

72.97.  As a direct and proximate result of Defendants'DRA's acts and omissions, Plaintiffs and the other heirs suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services, and support of their daughter; and the permanent destruction of their family unit.

73.98.  As a direct and proximate result of Defendants'RA's acts and omissions, Taylor suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor's untimely death and have incurred funeral and burial expenses as a result of her death.

### SIXTH CLAIM FOR RELIEF v. DRA
*(Breach of Fiduciary Duty)*

74.99.  Plaintiffs incorporates the previous paragraphs as if fully set forth herein.

75.100.      DRA owed a fiduciary duty to Plaintiffs' his daughter and to Plaintiffs.

76.101.      DRA breached the fiduciary duty it owed to Plaintiffs and theirhis daughter in failing to provide proper medical care to Taylor.

77.102.      As a direct and proximate result of DRA's acts and omissions, Plaintiffs and other heirs have suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

16

103.   As a direct and proximate result of DRA's acts and omissions, Taylor Goodridge suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor Goodridge's untimely death and have incurred funeral and burial expenses as a result of her death.

## SEVENTH CLAIM FOR RELIEF v. DRA
### *(Educational Negligence)*

104.   Plaintiffs incorporates the previous paragraphs as if fully set forth herein.

105.   Defendant DRA owed duties to Taylor and her parents to care and provide for Taylor as part of her educational experience at DRA.

106.   DRA (through its staff) breached the duties it owed to Plaintiffs and their daughter in failing to provide proper educational care to Taylor, in fostering a culture of distrust and shame to DRA when reporting a child's illness, in failing to provide constant care from a family practitioner, and in failing to allow Taylor to talk to her parents on December 13, 2022 or at any time while she was ill.

107.   As a direct and proximate result of DRA's acts and omissions, Plaintiffs and other heirs have suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

108.   As a direct and proximate result of DRA's acts and omissions, Taylor Goodridge suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor Goodridge's untimely death and have incurred funeral and burial expenses as a result of her death.

17

**EIGHTH CLAIM FOR RELIEF v. DRA, WILEY AND HUGHES**
*(Medical Negligence)*

109.    Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

110.    To the extent that Defendant DRA can call itself a medical provider, and defendants actual medical providers Wiley and Hughes, all owed duties to Taylor and her parents to care and provide for Taylor as part of her boarding at DRA.

111.    Said defendants breached the duties they owed to Plaintiffs and their daughter in failing to provide proper medical care to Taylor:

a.   In failing to refer Taylor to the medical director at DRA, defendant Worwood;

b.   In failing to take Taylor to a hospital or urgent care center after presenting with abnormal vitals on December 9, 2022;

c.   In failing to draw blood during her visits to the medical clinic in the week proceeding Taylor's death;

d.   In failing to have proper policies and procedures to deal with health issues;

e.   In failing to properly document Taylor's illness;

f.   In having a psychiatric nurse practitioner staff an urgent care and family practice clinic at DRA;

g.   In working beyond the scope of their licenses; and

h.   Any other acts of negligence that discovery may reveal.

112.    As a direct and proximate result of DRA's, Wiley's, and Hughes' acts and omissions, Plaintiffs and other heirs have suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the

18

care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

113.    As a direct and proximate result of DRA's, Wiley's, and Hughes' acts and omissions, Taylor Goodridge suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor Goodridge's untimely death and have incurred funeral and burial expenses as a result of her death.

**NINTH CLAIM FOR RELIEF v. WORWOOD**
*(Medical Negligence)*

114.    Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

115.    Defendant Worwood owed duties to Taylor and her parents to assure that proper medical care was provided to Taylor as part of her boarding at DRA.

116.    Defendant Worwood breached the duties he owed to Plaintiffs and their daughter in the following respects:

    a.   In failing to have proper policies and procedures to deal with health issues;

    b.   In failing to properly staff DRA's family practice medical clinic;

    c.   In having a psychiatric nurse practitioner staff an urgent care and family practice clinic at DRA;

    d.   Any other acts of negligence that discovery may reveal.

117.    As a direct and proximate result of DRA's, Wiley's and HughesDefendant Worwood's acts and omissions, Plaintiffs and other heirs have suffered and will continue to suffer the loss of the relationship with their daughter, causing them extreme mental and emotional anguish; loss of the care, comfort, companionship, society, guidance, love, affection, association, services and support of their daughter; and the permanent destruction of their family unit.

19

As a direct and proximate result of Defendant Worwood's negligent acts and omissions, Taylor Goodridge suffered severe physical pain, discomfort, loss of enjoyment of life, and death, and the Plaintiffs incurred medical expenses prior to Taylor Goodridge's untimely death and have incurred funeral and burial expenses as a result of her death.

78.118.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays for judgment against Defendants , DRA, as follows:

1. For general damages in an amount to be proved at trial;

2. For special damages in an amount to be proved at trial;

3. For punitive damages against DRA in an amount sufficient to punish DRA and to deter DRA and others in similar situations from engaging in such conduct in the future; and

4. For such other costs, expenses, attorney's fees, and other relief the Court finds appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

DATED this 123th5th day of July,May 2023.

MORTENSEN & MILNE

*/s/ Alan W. Mortensen*
Alan W. Mortensen
Lance L. Milne
Christopher J. Cheney

20

Joshua S. Ostler
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2023, I caused a true and correct copy of the foregoing THIRD AMENDED COMPLAINT to be filed with the Court electronically, and by email on all parties of record as follows:

Heidi Goebel
Samantha E. Wilcox
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, UT 84111
HGoebel@GAPClaw.com
SWilcox@GAPClaw.com

*/s/ Natalie Cottam*

21