Jaryl L. Rencher - #4903
Cami R. Schiel (#16941)
**RENCHER|ANJEWIERDEN**
460 South 400 East
Salt Lake City, Utah 84111
Telephone: (801) 961-1300
Facsimile: (801) 961-1311
rencher@lawfirmra.com
cami@lawfirmra.com
*Attorneys for Dr. Danny Worwood*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| DEAN JEFFRIES L. GOODRIDGE, Individually and as the Natural Father and as Personal Representative of the Estate of TAYLOR GOODRIDGE, Deceased, and AMBERLYNN WIGTION, Individually and as the Natural Mother of TAYLOR GOODRIDGE, Deceased<br><br>      Plaintiff,<br><br>v.<br><br>DIAMOND RANCH ACADEMY, INC. a Utah corporation; BIG SPRINGS PROPERTIES, LLC, a Utah limited liability company; DANNY WORWOOD, M.D., a resident of Utah; BROOKS WILEY, FPMHNP-BC, a resident of Utah; and CAMERON HUGHES, R.N., a resident of Utah,<br><br>      Defendant. | **MOTION TO DISMISS AND DISQUALIFY**<br><br>Case No. 4:22-cv-000102-DN<br><br>Honorable Judge David Nuffer<br><br>[REDACTED VERSION] |

COMES NOW Defendant Danny Worwood, M.D., ("Dr. Worwood" or alternatively, "Defendant") by and through counsel, hereby files his Motion to Dismiss and Disqualify (the "Motion").

## RELIEF REQUESTED

Defendant hereby requests (1) that Plaintiff's claims be dismissed with prejudice, or (2) in the alternative that Alan Mortensen ("Mortensen"), counsel for Plaintiffs, hereby be disqualified as counsel for Plaintiffs and from receiving any fee from any award in the above-captioned case, and (3) in the alternative monetary sanctions. The grounds for this Motion is that Plaintiff Dean Jeffries L. Goodridge and Mortensen disclosed to multiple news sources the confidential and privileged decision and opinion of Utah Department of Occupational and Professional Licensing's prelitigation panel, in violation of UCA § 78B-3-416(1)(d), constituting egregious conduct.

## STATEMENT OF FACTS

1) Plaintiffs Dean Jeffries L. Goodridge and Amberlynn Wigtion ("Wigtion"), both individually and as personal representative for the estate of Taylor L. Goodridge (collectively, "Plaintiffs"), initially filed the above-captioned case in federal court on December 30, 2022 against only Diamond Ranch Academy, Inc. (Dkt #2)

2) Plaintiffs' attorney Alan Mortensen's website claims he "tries and litigates…medical negligence…cases in the state and federal courts of Utah, Colorado, and Wyoming." *See* bio of Alan Mortensen, attached as Exhibit A.

3) Plaintiffs then submitted their claims to the Department of Occupational and Professional Licensing's ("DOPL") prelitigation panel (the "Panel"), pursuant to Utah Healthcare Malpractice Act, which held a hearing on July 10, 2023. This time Plaintiff included other defendants, including Dr. Danny Worwood, Cameron Hughes, and Brooks Wiley. (*See* Prelitigation Panel Decision at 1, Exhibit A-B to Dkt 40)

4) The Panel issued their decision and opinion ("Decision") on July 11, 2023. It included several statements including:

    a)                                               *Id.*

    b)                                                        "
*Id.*

    c)                                                         *Id.*

    d)

." *Id.*

5) Plaintiffs then filed a Motion to Amend the Complaint to add additional defendants. Importantly Plaintiffs and their attorney attached the nonbinding, confidential, privileged prelitigation Panel Decision as an exhibit to their public federal filing without redactions. (Dkt 40, Exhibit A-B)

6) This was filed prior to any appearance by counsel for Dr. Worwood or the other co-defendants Brooks Wiley and Cameron Hughes, so their counsel did not receive notice of the attached prelitigation panel decision. (Dkt 53, 54, and 76)

7) Multiple news outlets immediately reported the confidential, privileged results of the prelitigation panel decision, some of them linking to the public pre-litigation panel decision:

    a)     A July 14, 2023 ABC4 News article cites Mortensen explicitly disclosing the Panel's Decision**:**

i) "In a press release, Mortensen confirmed a medical malpractice review board determined Diamond Ranch Academy fell "far short of the standard of care." *See* July 14, 2023 ABC4 News article, attached as Exhibit B; *see also* https://www.abc4.com/news/southern-utah/far-short-of-the-standard-of-care-diamond-ranch-academy-denied-license-renewal-teen-death/.

ii) ""The Taylor Goodridge family is finally finding validation that their daughter's death was not accidental," said Mortensen in a release. "They are pleased that both the Division of Professional Licensing and the Department of Human Services is holding Diamond Ranch Academy responsible for its terrible decisions."" *Id.*

b) On July 14, 2023 Fox13 also explicitly referenced the Panel's Decision and actually included the Decision in its entirety—as well as documented Goodridge's reaction to the decision:

i) "a state medical review panel determined

at the school led to Goodridge's death on campus in December 2022." Fox13 article, attached as Exhibit C.

ii) "their lawsuit now proceeds strengthened by Utah's mandatory pre-litigation review process, **which officially found**

*Id.* (emphasis added).

iii) "The report by a panel of medical and legal professionals from the state Division of Licensing details multiple failures on the school's part,

including

  *Id.*

 iv)

               .” *Id.*

 v)

          .”

 vi)  "According to the panel,

 vii)  "Instead, the medical worker who was with Taylor on the day she died was psychiatric nurse Brooks Wiley. But the panel said

               *Id.*

 viii) 'In conclusion the panel said,

            .″' *Id.*

 ix)  "Reading that in the report was a bittersweet moment for Dean Goodridge. "I'm just finally glad that somebody listened instead of just again smacking them on the hand and saying you can still do your job," he said." *Id.*

x)      The Fox13 news article included the Panel Decision in its entirety.

*Id; see also* [https://www.fox13seattle.com/news/utah-boarding-school-diamond-ranch-academy-loses-license-following-death-of-snohomish-county-teen](https://www.fox13seattle.com/news/utah-boarding-school-diamond-ranch-academy-loses-license-following-death-of-snohomish-county-teen).

c)      NBC News also directly quoted the panel decision and provided a web link to the public exhibits on the Court's docket, including the Panel's Decision.

i)      *"*a Utah Department of Commerce review panel, which included three medical professionals and is part of a litigation process, determined that Diamond Ranch Academy had                            " in several ways before the death of 17-year-old Taylor Goodridge." *See* July 14, 2023 NBC News article, attached as Exhibit D *see also* [https://www.nbcnews.com/news/us-news/diamond-ranch-academy-ordered-shut-child-death-rcna94297](https://www.nbcnews.com/news/us-news/diamond-ranch-academy-ordered-shut-child-death-rcna94297).

ii)

, the panel found." *Id.*

iii)

the review panel found.

" *Id.*

iv)　　"The review panel noted that

*Id.*

v)

" the Department of Commerce review panel stated in its finding. The finding added that

*Id.*

vi)　The news article even quoted Mortensen directly stating, "The Taylor Goodridge family is finally finding validation that their daughter's death was not accidental." *Id.*

d)　　A July 17, 2023 Fox News article also directly quoted the panel decision:

i)　　"A state medical review panel found

*See* Fox News Article, attached as Exhibit E; *see also* https://www.foxnews.com/us/utah-therapeutic-boarding-school-loses-license-after-death-student-taylor-goodridge**.**

e)　　A July 18, 2023 Lynwood Times news article also discussed the panel's findings:

i)

" *See* Lynwood Times article, attached as Exhibit F;

see also https://lynnwoodtimes.com/2023/07/18/taylor-goodridge-230718/.

8) On May 10, 2023 Plaintiff's litigation paralegal emailed all counsel exhibits they were planning to use in the depositions of Defendants the following week. The anticipated exhibits included the Prelitigation Panel Decision. *See* REDACTED Email from Audrey Taoipu, with screenshot of Dropbox link with exhibits, including Notice of Panel Decision, attached as Exhibit G.

## RELEVANT LAW

*Prelitigation Panel Decision Confidentiality*

There is no question that Utah medical malpractice prelitigation panel decisions are "confidential, privileged, and immune from civil process." UCA § 78B-3-416(1)(d); *see also* UCA § 78-14-12. Utah Courts have consistently upheld this. "[T]he proceedings before the prelitigation panel 'are confidential, privileged, and immune from civil process.'" *Coroles v. State*, 2015 UT 48, ¶ 10, 349 P.3d 739 (Sup.Ct.) (internal citations omitted); *see also Medrano v. United States*, No. 2:19-CV-138 TS-DBP, 2021 U.S. Dist. LEXIS 36849, at *3 (D. Utah Feb. 25, 2021).

Prelitigation panel decisions are meant to be preliminary decisions, and are based on limited information before formal discovery has commenced. *See generally* UCA § 78B-3-412(1). The purpose of this confidentiality provision is to "encourage[] the parties to fully participate in the prelitigation hearing and evaluate the strengths and weaknesses of the claim **without fear of giving the opposing party an advantage in potential future litigation**." *Coroles* supra at ¶ 10 (internal citations omitted, emphasis added).

These decisions are not meant to be a final decision on the merits. These proceedings are "informal [and] nonbinding." UCA § 78B-3-416(1)(c). Moreover, Utah Courts have recognized that "one of the purposes of the confidentiality provision of the Malpractice Act is to **prevent the prelitigation-panel proceedings from affecting the actual litigation of a claim**." *Coroles,* supra at ¶ 1 (emphasis added).

The law is unclear as to which particular sanction is appropriate for violation of this confidentiality provision. "[T]here is no statute, rule, or caselaw authorizing the district court to sanction parties for a violation of the confidentiality provision of the Malpractice Act…and the Malpractice Act does not explicitly authorize the district court to take any particular action in response to a violation of the confidentiality provision." *Id.* at ¶ 12.

However, Utah courts have found that sanctions are well within the realm of possibility for egregious violations. In *Maret*, the Court was clear that, "…failure to keep prelitigation proceedings confidential may in the future result in sanctions." *Doe v. Maret*, 1999 UT 74, ¶ 21, 984 P.2d 980 (Sup.Ct.). In *Maret* the Court ultimately declined to impose sanctions for providing the notice of intent to an expert for his lone review but did not consider ramifications of publishing the actual panel's decision to a litany of news outlets. *Munson* later clarified the

*Maret* ruling, holding, "[t]he *Maret* decision is clearly erroneous inasmuch as it suggests that all documents **submitted** to a prelitigation panel are confidential…" [*Munson v. Chamberlain*, 2007 UT 91, ¶ 20, 173 P.3d 848 (Sup.Ct.)](emphasis added). But, while documents *submitted* to a panel may not be privileged or confidential, there is no question that the actual panel decision document is confidential. In fact, *Munson* was explicitly held that, "We conclude that documents and information **obtained by a party solely through participation in proceedings** before a prelitigation panel are confidential, privileged, and immune from civil process pursuant to Utah Code section 78-14-12(1)(d)." *Id.* at ¶ 18 (emphasis added). "[T]he protections afforded by the statute apply…**to the actual proceedings before such panels**." *Id.* at ¶ 11 (emphasis added). Importantly, the prelitigation process is not to be used as a weapon. "Prelitigation proceedings were never intended to be a trap for the unwary." *Id.* at ¶ 16.

<u>Utah Rules of Professional Conduct</u>

The Utah Rules of Professional Conduct forbid lawyers from making extrajudicial statements which the lawyer knows will materially prejudice the case. "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Utah R. Prof. Cond. 3.6(a).

The same rules also require attorneys not to violate state statutes, except in certain circumstances that do not apply here. "A lawyer shall not…knowingly disobey an obligation

under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." Utah R. Prof. Cond. 3.4(c).

<u>Sanctions</u>

"Courts of justice are . . . vested, by their very creation, with power to impose silence, respect, and decorum, in their presence." *Anderson v. Dunn*, 19 U.S. 204, 227, 5 L. Ed. 242 (1821). "Courts' authority to impose sanctions is grounded, first and foremost, in their inherent power to control the proceedings that take place before them." *Adams v. Hafen (In re Hafen)*, No. 2:23-cv-00230-JNP, 2024 U.S. Dist. LEXIS 55318, at *8-9 (D. Utah Mar. 26, 2024). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (quotation marks omitted). In *Chambers*, the Court noted that "[m]uch of the bad-faith conduct by [the offender] was beyond the reach of the Rules; his entire course of conduct throughout the lawsuit evidenced bad faith…and the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address." *Id.* at 50-51. "Thus, a federal court may exercise its inherent power to sanction a party or an attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re Hafen* at *9; *accord Ransmeier v. Mariani*, 718 F.3d 64, 68 (2nd Cir. 2013). "These powers also permit the issuance of sanctions where the conduct of the sanctioned litigant or attorney evinces bad faith or an egregious disrespect for the court or judicial process." *In re Hafen* at *9, (internal citations omitted).

A Court's decision to impose sanctions pursuant to its inherent power is routinely reviewed for an abuse of discretion. *Chambers*, 501 U.S. at 55. The "primary aspect of that discretion" is fashioning an appropriate sanction for conduct which abuses the judicial process. Outright dismissal of the lawsuit can be a "particularly severe sanction," but is still "within the court's discretion." *Chambers* at 44-45. This has been upheld in other cases. *Id.*[1]

Courts have imposed sanctions to deter offenders from repeating the behavior, as well as "to warn other lawyers about the consequences of similarly egregious behavior". *Ransmeier v. Mariani*, 718 F.3d 64, 71 (2d Cir. 2013).

In some cases, dismissal is "the only effective sanction for this egregious conduct." *Coyne v. Los Alamos Nat'l Sec., LLC*, No. CIV 15-0054 SCY/KBM, 2017 U.S. Dist. LEXIS 67021, at *15 (D.N.M. Mar. 21, 2017). Generally, a federal district court enjoys "inherent equitable powers to impose the sanction of dismissal with prejudice because of abusive litigation practices during discovery." *Id.* at *3. When reviewing a lower court's decision, appellate courts have upheld the decision "to impose dismissal as a sanction where there has been egregious conduct by a party in the discovery process that interferes with the judicial process." *Id.* at *21 (dismissal of claims was appropriate when Plaintiff erased and reset her iPhone the day it was to be turned over to defense counsel). "Dismissal is warranted when 'the aggravating factors

---

[1] U.S. Courts have gone so far as to hold that, "punishing for contempt shall not extend beyond its known and acknowledged limits of fine and imprisonment." *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227-28 (1821). One 10th District Court judge "apparently believed that dismissal might in fact be too *lenient* a sanction and that jailing [the offending attorney] for contempt might be more appropriate." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 922 (10th Cir. 1992). Consequently, the "less severe sanction" of an assessment of attorney's fees is undoubtedly within a court's inherent power as well. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 2132-33 (1991) (internal citations omitted)

outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Id. at *4,* (citing *Meade v. Grubbs*, 841 F.2d 1512, 1521 n.7 (10th Cir. 1998)).

Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal citations omitted). However, these factors should not be a "rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Id.* Courts should "evaluate these factors on the record." *Id.* In *Ehrenhause v. Reynolds* the judge noted that, "[i]f this [offender] could ignore court orders here without suffering the consequences, then the district court cannot administer orderly justice, and the result would be chaos." *Id.*

## **ARGUMENT**

### I.      **The Goodridge Prelitigation Panel Decision is confidential and privileged**

The Goodridge Prelitigation Panel Decision is "confidential [and] privileged." UCA § 78B-3-416(1)(d). Unlike a Notice of Intent which Plaintiffs submit to the panel in order to initiate the litigation process, the Panel Decision is issued by the panelists after the hearing. Their decision can only be "obtained by a party solely through participation in proceedings before a prelitigation panel." *Munson* at ¶20. Thus, the actual document and its contents are "confidential, privileged, and immune from civil process pursuant to Utah Code section 78-14-12(1)(d)."

*Coroles* at ¶ 18. Keeping this confidential encourages the parties to "participate in the hearing and evaluate the strengths and weakness of the claim." *Id.* at ¶ 10.

## II. Mortensen and Goodridge have engaged in egregious conduct by publishing the Panel Decision to multiple news outlets and the federal docket

Mortensen's and Goodridge's conduct constitutes egregious conduct given their persistent dissemination of this confidential Decision.

### *Public Dissemination of Confidential Panel Decision*

Mortensen and Goodridge both made statements to news outlets disclosing the confidential findings of the Panel's Decision. Mortensen actually held a "press release" to deliberately publish these confidential findings. He explicitly mentioned DOPL and quoted the wording in the Decision that the providers                                    .'" He publicly celebrated DOPL "holding Diamond Ranch Academy responsible for its terrible decisions." He added that, "The Taylor Goodridge family is finally finding validation that their daughter's death was not accidental." *See* NBC News Article, attached as Exhibit D. These statements are extremely inflammatory and prejudicial and disseminated widely to the general public. Moreover, they deliberately misconstrue the panel's finding as "holding Diamond Ranch Academy responsible." The brief, preliminary prelitigation panel decisions are explicitly "informal and nonbinding."

Goodridge himself is also quoted discussing the Panel's Decision with Fox 13.

In conclusion the panel said, "This was a tragic death of an otherwise healthy adolescent that likely could have been avoided." Reading that in the report was a bittersweet moment for Dean Goodridge. "I'm just finally glad that somebody listened instead of just again smacking them on the hand and saying you can still do your job," he said.

*See* Exhibit C.

Moreover, Mortensen included the Panel's Decision as an Exhibit to his Motion to Amend which he published to the public federal docket. (Dkt 40-1). At the time this was not disseminated to any of the current counsel for Defendants, because at the time none of them had entered an appearance. Instead, contemporaneously, multiple news outlets learned of its existence and published it on their websites. *See* Exhibit C specifically including the prelitigation panel decision in its entirety.

## *Egregious Conduct*

Mortensen and Goodridge's statements constitute egregious conduct. Even if Goodridge was unaware that the Panel Decision is meant to be confidential and privileged, his attorney is certainly aware. Mortensen touts a long history of medical negligence cases, with ample experience working with prelitigation panels and reviewing their decisions. He is aware of the privileged nature and confidentiality requirements related to the Decision. Yet in spite of Utah statute and case law he has made affirmative representations to the press of the contents of the Panel's Decision.

Even more, Mortensen violated Rule 3.6 of Utah Rules of Professional Conduct. He made extrajudicial statements about the Panel's Decision to the press, with the knowledge and express purpose of disseminating the information to the public. This undoubtedly will prejudice any adjudicative proceeding, as it is likely many potential jury members will have reviewed the preliminary Decision from the multitude of news sources. *See* Rule 3.6 of Utah Rules of Professional Conduct. It could be impossible to adequately screen for this biased public knowledge several years down the road during a jury voir dire.

Mortensen also violated the statutory confidentiality provision for prelitigation panels under the Utah Malpractice Act. This also constitutes a violation of Rule 3.4 of Utah Rules of Professional Conduct. Notably, he did not openly refuse to comply with these rules on the grounds that no valid rule exists, as might be excepted under the rule. Given his alleged experience with medical negligence cases he is fully aware of this confidentiality requirement and still violated it. Publishing the contents of the Panel's Decision in a variety of ways is a direct violation of the Utah Malpractice Act and any overseeing court, and thus constitutes a violation of Rule 3.4 of the Utah Rules of Professional Conduct.

*Panel Decision Now a Weapon*

Had they known it would not, in fact, be kept confidential the Defendants would likely not have participated in the Panel. They likely would have waited until additional discovery could have been made so as to offer a more robust picture of the facts. They would also have the benefit of depositions, discovery requests, additional documents from each of the parties, etc. with which to assert their valid defenses.

By publishing the Decision to any news outlet who will listen in Utah and Washington, Plaintiffs have established a distinct, unique advantage of control of the story. Their violation of the Utah State statute has very likely affected the outcome of the litigation. Publicizing a preliminary decision by three non-designated experts based on limited information defies the prelitigation panel's express purpose. This gives an unfair advantage to one party and very likely affects the opinion of jury members long before the trial could even occur. From the outset of the litigation Plaintiffs and their counsel have tainted the jury pool. This negates the whole goal of

the Utah legislature to keep the decision confidential and privileged and encourage early settlement or resolution.

Instead of being non-binding, the Panel Decision here is being used as a weapon. It is being disseminated as a final adjudication on the merits. (The Panel "officially found their case has merit." *See* Exhibit C.) This is despite the fact that the prelitigation panel does not have access to full discovery or robust debate. The Panel is held at the outset of the case before any depositions or discovery requests have been conducted. It lasts only an hour or two. The parties or their attorneys may not be fully apprised of all the facts, and the evidence often offered by proffer, with normal rules of evidence reserved until the actual trial. It is a brief, preliminary opportunity for the parties to evaluate the claims and make preliminary determinations. It is not treated like a final adjudication on the claims' merits, nor should it be. By publicizing the Panel's Decision Goodridge and Mortensen have violated the trust from multiple healthcare providers and undermined the medical negligence judicial process. In effect, Plaintiffs and their counsel used the Prelitigation Panel as a trap for the unwary Defendants. They disseminated an informal, preliminary decision which should not be binding, while claiming it is. Plaintiff Goodridge and his attorney's actions constitute egregious conduct. Their actions should not be tolerated.

### III. Sanctions Should Include Dismissal of the Claims, Disqualification of Mortensen, etc.

*Dismissal*

Despite the Malpractice Act's silence on consequences for violating its confidentiality provision, the Court should exercise its "inherent power" to impose sanctions to deter future discussion and dissemination of the Panel Decision in this case. *See Chambers* supra at 50-51.

Sanctions would also warn other lawyers in other cases of the "consequences of similarly egregious behavior." *Ransmeier* at 71. Failure to address this misbehavior could strip the relevant portions Utah Malpractice Act of any power. *See In re Hafen,* supra at *8-9.

A court need not be limited in its sanctioning power to a statute or rules. Like in *Chambers*, Mortensen and Goodridge's conduct may be beyond the reach of the Rules, but their entire course of conduct demonstrates actions that are "intertwined within conduct that only the [Court's] inherent power could address." *Chambers* supra at 50-51. Their repeated dissemination of the Decision to a multitude of new sources, apparently holding a *press release* expressly for that purpose, including the Panel Decision as a public exhibit in their filing, and even including it as an exhibit for the purpose of questioning a party at a deposition evinces intentional, vexatious, and wanton conduct and "egregious disrespect for the court or judicial process." *In re Hafen* at *9. This warrants severe sanctions, including dismissal of the claims.

Although dismissal may be severe, it is within this Court's discretion. *Chambers* at 44-45. And here it is warranted under an *Ehrenhaus* analysis. By disseminating the confidential Panel Decision to untold numbers of people, the chances of finding an impartial jury in either Utah or Washington are greatly reduced. Dismissal is likely "the only effective sanction for this egregious conduct." *Coyne* at *15.

Furthermore, Goodridge's and Mortensen's actions impede the "orderly and expeditious disposition" of their claims. *Chambers* at 43-44. Like in *Coyne*, Mortensen and Goodridge have engaged in "egregious conduct by a party in the discovery process that interferes with the judicial process" and Plaintiffs' claims should be dismissed. *Coyne* at *21. They have attempted to sway public opinion against all defendants based solely on informal, confidential, and non-

binding findings. Here too, dismissal is warranted because 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Id. at \*4,* (citing *Meade v. Grubbs,* 841 F.2d 1512, 1521 n.7 (10th Cir. 1998)). At this point it is questionable whether the claims could even be decided on their merits, given the inherent prejudice the disseminated Panel's Decision has caused. The aggravating factors of Mortensen's repeated and blatant misuse of the prelitigation process outweigh a resolution on any merits. And multiple Defendants continue to dispute any merit to the claims, even in light of the hurried findings from the prelitigation panel. In fact, Dr. Worwood heavily disputes that he is the medical director, contrary to the prelitigation panel's rushed findings. *See* Dkt 40 Ex A-B.

A fair analysis supports dismissal as a "just sanction." *Ehrenhaus* at 921. Here, the degree of actual prejudice to defendants is extreme. Disseminating a non-binding finding to the entire state of Utah and relevant parts of Washington is enormously prejudicial, and potentially non-recoverable. Prejudicing an entire jury pool interferes with the sacrosanct jury deliberations, paramount to our justice system. If jury members are informed of the Panel's nonbinding Decision by the media years before a trial, with the Decision lauded as a final adjudication, the jury cannot truly be impartial. The prejudice is stark.

And, like in *Eherenhaus*, here the culpability of the litigant is clear. Goodridge and Mortensen have both been quoted by multiple news agencies discussing the Panel's Decision and Mortensen signed the Motion to Amend with the attached Panel Decision he filed on the public record. Even if this Court had not warned Goodridge or Mortensen not to disseminate the Decision, any such warning is unnecessary given Mortensen's extensive experience with and awareness of medical negligence case law in Utah as well as the clear Utah statute and

supportive state and federal case law establishing its confidentiality. Finally, lesser sanctions would not be effective at addressing the issue, since no fines or removal of attorneys could remove the prejudice Defendants now face from a blighted jury pool. If Mortensen and Goodridge are permitted to ignore clear Utah statute without the Court "administer[ing] orderly justice…the result would be chaos." *Id.*

<u>Alternatively, Dismissal of Counsel</u>

Alternatively, should the Court decline to dismiss the claims in toto, Mortensen should be dismissed as counsel for Plaintiff and take no fee from any settlement or award therefrom. His egregious conduct includes violating the Utah Malpractice Act, violating Utah Rules of Professional Conduct, and violating clear Utah substantive case law. A "just sanction" should include his recusal from this action due to his misbehavior.

<u>Alternative Sanctions</u>

In the alternative, in the event the Court declines to dismiss Mortensen as Plaintiffs' counsel, Defendants request (1) monetary sanctions, (2) an order he not be permitted to take any fee from any settlement or award, (3) at the bare minimum he not be permitted to conduct any more press conferences or make any additional extra-judicial statements to the press and (4) no party or witness may be questioned about the prelitigation panel decision in deposition or other setting.

And finally, if the Court declines to dismiss the claims then Defendants request the Court order monetary sanctions in the amount of ten times the cost to file this motion to each defendant, which is consistent with punitive damages in general.

## CONCLUSION

Plaintiffs' and their counsel's deliberate publishing of DOPL's prelitigation panel decision constitutes blatant disregard for Utah medical malpractice law. Failure to establish consequences or sanctions for such blatant and egregious disregard of Utah and federal law severely undermines the law and the Courts. Given Mortensen and Goodridge's egregious conduct the most appropriate sanction is complete dismissal of all claims. In the alternative, the Court should dismiss Mortensen as counsel and enter an order that neither he nor his firm be permitted to receive any awarded monies. Although other sanctions can and should be considered, including monetary penalties, dismissal is the most appropriate for this shocking behavior.

DATED this 30th day of May 2024.

RENCHER ANJEWIERDEN

/s/ Cami R. Schiel
Jaryl L. Rencher
Cami R. Schiel
*Attorneys for Defendant Danny Worwood, M.D.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2024, I caused a true and correct copy of the foregoing

MOTION TO DISMISS AND DISQUALIFY to be filed with the Court electronically, and by

email on all parties of record as follows:

Ruth A. Shapiro
Bryson R. Brown
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Attorneys for Diamond Ranch Academy, Inc.

Robert L. Janicki
Michael L. Ford
STRONG & HANNI
9350 South 150 East, Suite 500
Sandy, Utah 84070
Telephone: (801) 532-7080
rjanicki@strongandhanni.com
mford@strongandhanni.com
*Attorneys for Defendant Cameron Hughes, RN*

Mark A. Nickel
Rosalie Lindsay-Guimaraes
GORDON REES SCULLY MANSUKHANI, LLP
15 W. South Temple St., Suite 1600
Salt Lake City, Utah 84101
Telephone: (801) 204-9989
mnickel@grsm.com
rlindsay@grsm.com
*Attorneys for Defendant Brooks Wiley, FPMHNP-BC*

Alan Mortensen
Lance L. Milne
Christopher J. Cheney
MORTENSEN|MILNE
68 South Main, Suite 700
Salt Lake City, Utah 84101
amort@mortmilnelaw.com
lmilne@mortmilnelaw.com
ccheney@mortmilnelaw.com

*Attorneys for Plaintiffs*

s/ Jane Ratcliffe
_____

# EXHIBIT A



MORTENSEN & MILNE

ATTORNEYS     AREAS OF PRACTICE     RESULTS     RESOURCES     DIRECTIONS     CONTACT          801-521-4444          EN ⌄

# Alan W. Mortensen

✉  amort@mortmilnelaw.com          ⬇ Download vCard

f     ⊙     in

One of the most active trial lawyers, Alan W. Mortensen has been the lead attorney on numerous cases – including aviation and truck accidents as well as insurance bad faith claims – that have been closely followed throughout the nation as well as in Utah, including his record setting $25,000,000 product liability wrongful death jury verdict in Utah and Elko, Nevada tragedy case.

These cases have also included being on the steering committee of the Asiana Air Disaster at San Francisco, and a multi-million-dollar result from the Utah Supreme Court against the Fundamentalist Church of Jesus Christ of Latter Day Saints' United Effort Plan Trust. He also was the lead attorney in a Guatemalan Air disaster in which several service missionaries from Utah, Illinois and Guatemala were killed and injured in a Cessna Caravan that had a defective Pratt & Whitney PT6 Engine. He has spent an extensive amount of time across the world investigating and litigating other aviation disasters, including cases in Honduras, Peru and Oregon.

Mr. Mortensen also was one of the lead attorneys in the Crandall Canyon Mine disaster case. He has tried and litigated diverse semi-truck disasters, including representing victims against such companies as Merit Trucking, Marten Trucking, Knight Trucking, Fed Ex, JB Hunt Trucking, Werner Trucking, Swift Trucking, Central Refrigerated Trucking, H&R Transport and Utility Trailers.

Mr. Mortensen also tries and litigates motor vehicle accidents, mining accidents, sexual abuse, civil rights, workplace injury, product liability, medical negligence, construction defect, forfeiture, employment, and insurance bad faith and coverage cases in the state and federal courts of Utah, Colorado, and Wyoming. Several of these cases have resulted in multi-million-dollar settlements or verdicts. He has also successfully appealed cases to the Utah Supreme Court, the Utah Court of Appeals, the Wyoming Supreme Court, and the Tenth Circuit Court of Appeals.

Mr. Mortensen is a member of American Board of Trial Advocates (ABOTA) and Litigation Counsel of America. He is part of the Mountain States Super Lawyers list, an honor awarded to only five percent of attorneys in Utah each year. He is in the Top 100 Trial Lawyers of The American Trial Lawyers, is a platinum member of The Verdict Club for Premier Trial Lawyers and is a member of the Million Dollar and Multi-Million Dollar Advocates Forum for having both verdicts and settlements in the eight-figure range. For several years, he has been selected as one of Utah's Legal Elite, as recognized by Utah Business magazine.

Mr. Mortensen is active in many professional organizations. A past President of the Utah Association for Justice, he also is a member of the American Association for Justice. He is a member of the Utah State Bar and the Salt Lake County Bar Associations, as well as the Wyoming Trial Lawyers Association. He is a Barrister in the David K. Watkiss-Sutherland II (American Inns of Court). He also is sought periodically for interviews in the national media regarding his legal expertise.

An alumnus of Brigham Young University, the University of Utah and the University of Wyoming's College of Law, where he was published and edited for The Wyoming Law Review. Mr. Mortensen is fluent in Spanish, having lived in Mexico and Guatemala. He has gained working expertise in the civil codes of Latin America and their application to Courts in the United States and has authored articles that have appeared in several legal journals, including the Utah Trial Journal. He is a frequent lecturer and has given several seminar presentations to his peers. He lives in Bountiful, Utah with his wife, Robyn. They have five children and five grandchildren. When Mr. Mortensen is not busy practicing law, he is an avid Westminster volleyball fan, Brigham Young University football fan and a member of the BYU Cougar Club. An arts advocate, he sat for many years on the board of directors at Centerpoint Legacy Theater, which he and his wife continue to support.

SIGNIFICANT CASES & TRIALS       LICENSES & ADMISSIONS       PUBLISHED DECISIONS       PRESENTATIONS

ASSOCIATIONS

- 2021 $25 MILLION JURY VERDICT: Mahe v. Century Blinds, Inc.

- 2021: $36.75 million single plaintiff settlement of a case involving a brain injured victim.

- 2017 $16 MILLION VERDICT: Wall v. Fundamentalist Church of Jesus Christ of Latter-Day Saints and Warren Jeffs

- 2016 $2.75 MILLION SETTLEMENT: Wall v. United Effort Plan Trust, Appeal to Utah Supreme Court

Privacy - Terms

- 2013: Peruvian Chinook Helicopter in Pucallpa, Peru, confidential settlement
- 2011 Asiana Air Flight 214 Air Disaster in San Francisco, Steering Committee, confidential settlement
- 2011 $2,009,173 VERDICT: Jefferies v. Earnshaw
- 2008: Guatemala Cessna Gran Caravan Crash, confidential settlement

- 2007 HIGHEST MINE WRONGFUL DEATH SETTLEMENT IN US HISTORY: Crandall Canyon Mine Disaster in Huntington, Utah
- 2005 $10,515,720 VERDICT: Safeway Inc. v.
- 2004 CONFIDENTIAL SEVEN FIGURE SETTLEMENT: John and Jane Doe v. LA Catholic Diocese Sex Abuse Scandal

# Send Us a Message



First Name

| Your First Name |

Last Name

| Your Last Name |

Phone Number

| Your Phone Number |

Email Address

| Your Email Address |

Brief Description of Your Case

| Your message |

SUBMIT

VISIT US

68 South Main Street
Floor 7
Salt Lake City, Utah 84101
Map & Directions

REACH US

P: 801-521-4444
F: 866-689-1992
theopinion@mortmilnelaw.com

Copyright 2024 Mortensen & Milne | ALL RIGHTS RESERVED    PRIVACY POLICY    DISCLAIMER    SITE MAP    Law Firm Website Design by LawFirmSites

# EXHIBIT B

73°                                                        SIGN UP        WATCH NOW



**SOUTHERN UTAH NEWS**

‘                                        ’: Diamond Ranch Academy denied license renewal
**teen death**

by: Derick Fox
Posted: Jul 14, 2023 / 12:20 PM MDT
Updated: Jul 14, 2023 / 10:18 PM MDT

SHARE      

HURRICANE, Utah (**ABC4**) — The **Diamond Ranch Academy,** a therapeut c board ng school for troubled teens n southern Utah, has been forced to close after the Utah State Department of Health and Human Serv ces den ed a renewal of the fac l ty's l cense.

The fac l ty has been under scrut ny after a 17-year-old g rl, Taylor Goodr dge, **died while under Academy's care** n December 2022. Goodr dge's **autopsy report showed** that she d ed of per ton t s, a curable d sease often caused by an nfect on from a hole n the bowel or a burst append x.

**'Ring of Fire' eclipse will cross over Utah in October ❯**

Goodr dge's fam ly alleges that she was never taken to the hosp tal for care, result ng n "complete organ fa lure" and her death.

**This website uses cookies**

Ou   ope   es use cook es fo   he pe fo mance and func ona   y of ou  s es, o pe sona  ze con en  and adve   semen s, o   
p ov de soc a  med a fea u es, fo  ana y  cs, and  o p ov de you w  h a be e  expe  ence. By c ck ng "Accep   o  by con  nu ng o   
use ou    ope   es, you accep   he use of cook es. Whe  e s a e p  vacy  aws  nc ude a   gh  fo  es den s o op  ou  of he sa e o   
sha  ng of  he   da a,  es den s of such s a es can exe c se  he    gh  by **clicking here.**

[Accept]

Enter Your Email

SIGN UP NOW ❯

In a press release, Mortensen conf rmed a med cal malpract ce rev ew board determ ned

Mortensen sa d the department also den ed the renewal of the Academy's l cense " n part because at least three ch ldren have d ed at ts fac l ty."

A 2016 lawsu t shows a 16-year-old boy d ed by su c de wh le under the Academy's care. In 2009, a 14-year-old boy d ed from compl cat ons w th congen tal adrenal hyperplas a, per reports.

"The Taylor Goodr dge fam ly s f nally f nd ng val dat on that the r daughter's death was not acc dental," sa d Mortensen n a release. "They are pleased that both the D v s on of Profess onal L cens ng and the Department of Human Serv ces s hold ng D amond Ranch Academy respons ble for ts terr ble dec s ons."

"I am stoked to hear that the school s shut down," Taylor's mother, Amber W gt on, told ABC4. "My heart breaks at the fact that t has taken th s long and four deaths for t to happen. But I just keep look ng on the br ght s de of th ngs and know that my daughter, as well as the others, has rescued hundreds of students now."

**12 bodies found under former Paiute Indian boarding school** ❯

Par s H lton, who has **advocated against the troubled teen industry** after her t me w th Provo Canyon School n Utah, **tweeted saying she was shaking due to excitement** that D amond Ranch Academy was clos ng.

"The state held th s fac l ty accountable and I am so happy they can no longer abuse k ds," sa d H lton. "To all the surv vors who worked to make th s a real ty, congratulat ons. I am so proud of you!"

ABC4 reached out to D amond Ranch Academy for comment but has not heard back by the t me of publ cat on.

Mortensen sa d D amond Ranch Academy cl ents have unt l Monday, August 14, to leave the fac l ty. ABC4 has also reached out to the Utah D v s on of Profess onal L cens ng for what the next steps w ll be follow ng the closure.

Copyright 2024 Nexstar Media Inc. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.

SPONSORED CONTENT

BESTREVIEWS

READ NEXT > ✕

**This website uses cookies**

Ou ope es use cook es fo he pe fo mance and func ona y of ou s es, o pe sona ze con en and adve semen s, o p ov de soc a med a fea u es, fo ana y cs, and o p ov de you w h a be e expe ence. By c ck ng "Accep o by con nu ng o use ou ope es, you accep he use of cook es. Whe e s a e p vacy aws nc ude a gh fo es den s o op ou of he sa e o sha ng of he da a, es den s of such s a es can exe c se he gh by **clicking here**.

# EXHIBIT C

Watch Live

# Utah boarding school loses license following deat Washington teen Taylor Goodridge

By Alejandra Guzman , Katie McDowell and Kelly Hatmaker  |  Updated  July 14, 2023 5:07pm PDT
|  Snohomish County  |  FOX 13 Seattle  |

**Utah boarding school loses license following death of Snohomish County teen**

The death of a Snohomish County, Washington girl at a Utah-based therapeuti boarding school has led to the loss of its license, and a separate decision fou that staff

The decision by the state's Department of Health and Human Services related the case of Taylor Goodridge was the second major setback for the Diamond Ranch Academy to come to light Thursday. Just hours earlier, a state medical review panel determined                                                     "
                                                        .

That report and the licensing decision show how Taylor's death exposed mult issues at Diamond Ranch Academy. Acting separately, each authority conclud that

                                                . On December 20th, 2022, Diamond Ranch Academy called to say Taylor had suddenly passed away; her family hadn't kn she was even sick. "I think about what she would have done later in life, and where she would have been," said Dean Goodridge, Taylor's dad. "During the memorial, I was the last one to see her, I'm the one who helped close the cas

Autopsy results show Taylor died from peritonitis, an abdominal infection tha usually treatable if antibiotics are administered in time. It's a fact that haunts

Dean Goodridge to this day: he says his daughter would have recovered "if th would have took her to the doctor, took her to the ER."

In denying Diamond Academy a new license, the Utah Department of Health Human Services cited instances of severe physical neglect by the school's assistant medical director, and a failure by the school to monitor staff to ensu compliance with the needs of its clients – teen-aged students, with behaviora other issues. While the agency did not specifically tie those issues to Taylor's it referred to her death, and the deaths of two other students prominently in decision.

**Read the denial of new license application:**

The DHHS denial letter obtained by FOX 13 Thursday was dated July 11th; the state is giving the academy until August 14th to send students home or to oth schools. Dean says it helps give the loss of his daughter a powerful new mean "Taylor did it for them. She did it. Her sacrifice, as you want to put it," he said. mean, it's not going in vain. She's helping a lot of children." That gift to those k and their families is coming at an emotional time for Taylor's family. "Saturday Taylor would be 18," Dean said.

**Read the denial of license renewal:**

But instead of celebrating with their daughter, the family is gearing up for the stage of their fight for justice. "They still have a lot to answer for," Dean said. T family is still suing the school over Taylor's death – and their lawsuit now proce strengthened by Utah's mandatory pre-litigation review process, which officia found

The report by a panel of medical and legal professionals from the state Divisi Licensing details

That poor treatmen

something Taylor's dad has long maintained: "They didn't take care of my chil
they say they promised me."

The panel based its conclusions

; FOX 13 spoke with Rac
Goodrich, a former Academy worker, who says she saw first-hand how Taylor
health deteriorated. "She would beg me, she would say, 'please help me, plea
need to go to the hospital'," Rachel recalled.

The panel found that

"Four days before she passed away we
were on our way to dinner and she had thrown up and then she collapsed in
own vomit passed out," Rachel confirmed. "I couldn't get her to get up."

According to the panel,

Instead, the medical worker who was with Taylor on the day she died was
psychiatric nurse Brooks Wiley. But the panel said

**WA family suing 'troubled teen' treatment facility after daughter's death**
A Snohomish County family is fighting to shut down a so-called "troubled teen
treatment facility in Utah after their daughter collapsed and died on the camp
last year.

In conclusion the panel said, _____

_____." Reading that in the report was

bittersweet moment for Dean Goodridge. "I'm just finally glad that somebody

listened instead of just again smacking them on the hand and saying you can

do your job," he said.

The local district attorney's office told FOX 13 last month it was not filing any

criminal charges in Taylor's death, due to lack of evidence. But Dean is hoping

new information will soon find its way to prosecutors; emails to law enforcem

asking whether the case may be re-opened have not been returned. Meantim

Academy officials can appeal the state's decision to deny its license – FOX 13

reached out to them for comment as well, and will update this story with thei

response when it becomes available.

**Read the notice of panel decision:**

This material may not be published, broadcast, rewritten, or redistributed. ©2024 FOX Television Stations

# EXHIBIT D

U.S. NEWS

# Troubled teen facility in Utah ordered to shut down after child's death

A state panel determined



—  Diamond Ranch Academy, a boarding school in Hurricane, Utah, is closing.  Google Earth

July 14, 2023, 3:33 PM MDT

**By Tyler Kingkade**

A facility for troubled teens in Utah will close after the state government declined this week to renew its license, citing the deaths of multiple children in its care.

The Utah Department of Health and Human Services on Tuesday informed Diamond Ranch Academy – a residential treatment center that promises to help adolescents with behavioral, mental health or substance abuse challenges – that it will not renew its license because of repeated violations. The facility must discharge all children in its care and shut down by Aug. 14.

The state's decision came one day after a Utah Department of Commerce review panel, which included three medical professionals and is part of a litigation process, determined that

.

Taylor, a patient at the facility, died on Dec. 20; an autopsy report found that an infection in her abdomen led to sepsis, a life-threatening condition that is often treatable with antibiotics. A state investigation previously concluded that



— Taylor Goodridge.  Courtesy the Goodridge family

according to the review panel's findings this week.

, the panel found.

, the review panel found.
An attorney for Worwood did not immediately respond to a request for comment.

## Recommended



U.S. NEWS
**Boeing breached '21 deal that shielded it from criminal charges over 737 Max crashes, DOJ says**



U.S. NEWS
**Chiefs kicker Harrison Butker unleashes on Pride month, Biden during commencement address**

In a statement, Diamond Ranch Academy executive director Ricky Dias said the state government had treated his company unjustly.

"The decision to cease operations has been spurned by unfair treatment from the State of Utah which has consistently demonstrated its lack of concern for the safety, well-being, and treatment of youth in programs," Dias said.

Former Diamond Ranch Academy staff members previously told NBC News that facility management taught them that children would fake or exaggerate being sick to get attention or to convince their parents to take them home. The facility controlled when children were allowed to use the phone and whom they were permitted to call.

The review panel noted that

Taylor, a member of the Stillaguamish Tribe in Washington, had been placed at Diamond Ranch Academy in October 2021 to receive therapy and address behavioral issues, her family said. Her

tribe paid the for-profit facility $12,000 a month, according to a court filing.

---

**Accusations of mistreatment in youth facilities**

- Two Christian programs in Wyoming were accused of forcing troubled teens to do heavy farm work and using humiliating punishments, such as tying girls to goats. One of the ranches has closed following the allegations.

- Girls alleged abuse at Circle of Hope Girls' Ranch in Missouri for years. It stayed open until they got on TikTok. Ultimately, the owners faced 100 criminal charges, and the case prompted changes in state law.

- A Michigan youth facility had an extensive pattern of violations, raising questions about why the state didn't act before a restraint caused a 16-year-old boy's death.

- Paris Hilton joined children's rights advocates in pushing Congress to enact new federal oversight of the troubled teen industry after having helped pass a reform bill in Utah.

---

Taylor's parents, Dean Goodridge and AmberLynn Wigtion, are suing the facility in federal court, accusing it of neglecting to address their daughter's illness.

"The Taylor Goodridge family is finally finding validation that their daughter's death was not accidental," said Alan Mortensen, the parents' lawyer. He added that the family is glad that the state " is holding Diamond Ranch Academy responsible for its terrible decisions. Diamond Ranch has put itself where it finds itself now."

The facility has tried to get the suit tossed in part over technicalities, and argued that a failure to provide medical care would not amount to "harmful conditions." The litigation is ongoing.

The Department of Health and Human Services said in its letter to the facility that the state already placed Diamond Ranch Academy's license on probation twice in the past year, and that two children had died in its care before Taylor.

"

the Department of Commerce review panel stated in its finding. The finding added that

"

# EXHIBIT E

UTAH

# Utah 'therapeutic' boarding school loses license after death of student Taylor Goodridge

Diamond Ranch Academy will close on August 14 after Utah officials declined to renew its license

 By **Andrea Vacchiano** · **Fox News**

Published July 17, 2023 4:38pm EDT



**Utah mom accused of fatally poisoning husband denied bail**

Jeff Paul reports on Utah mom accused of lacing her husband's drink with fentanyl.

The Utah boarding school where a teenage girl died of sepsis has lost its medical treatment licenses and will close next month, new documents reveal.

FOX 13 Seattle obtained a letter sent from Utah's Department of Health and Human Services (DHHS) to Diamond Ranch Academy in Hurricane. The "therapeutic boarding school," which serves troubled teenage girls, charges tuition at upwards of $12,000 a month.

In a letter dated July 11, the DHHS rejected the school's request for day treatment and outpatient treatment licenses. The department noted that the school's assistant medical director has been accused of physical neglect and that the school's staff had been observed neglecting clients.

A state medical review panel found                                                                      .
The facility will remain open until August 14 as it discharges clients, according to the documents.

**FATHER SUING UTAH BOARDING SCHOOL FOR ALLEGED MALPRACTICE AFTER DAUGHTER'S DEATH**



**Taylor Goodridge died of peritonitis, an infection of abdomen tissue, followed by sepsis, which caused her organs to fail in December 2022 at Diamond Ranch Academy in Utah. (Dean Goodridge)**

Taylor Goodridge, 17, died from organ failure after suffering from sepsis and peritonitis, an infection of abdomen tissue, in December 2022. The infections spread to her pancreas, heart, liver and kidneys.

Goodridge complained about feeling sick and vomiting for weeks before she died, her family's attorney said. Diamond Ranch Academy staff reportedly told the victim that she was pretending to be sick and told her to "suck it up." They eventually recommended drinking water and taking aspirin.

On the day that Goodridge died, school staff made her get out of bed, shower and head over to the school's medical clinic. She was reportedly not allowed to access her phone when she was sick.

"It's something that's easily treated with antibiotics, especially with a healthy 17-year-old," attorney Alan W. Mortensen of Mortensen and Miline previously told Fox News Digital. "The first signs of peritonitis are vomiting and stomach cramps, both of which Taylor had for… at least two-and-a-half weeks before she died."

**UTAH MAN WHO ALLEGEDLY KILLED WIFE AND 5 KINDS IN MURDER-SUICIDE BLAMED SPOUSE FOR FAILED MARRIAGE**



**Diamond Ranch Academy promised to make a "long-term difference" in troubled teens, but the Goodridge family and others are demanding the school be shut down for good. (Google Maps)**

"She was never taken to the hospital. Her complaints were ignored, and she was punished for making the complaints," Mortenson added.

Goodridge's father Dean said that the license denial will help other children in the future.

"Taylor did it for them. She did it. Her sacrifice, as you want to put it," Taylor's father Dean Goodridge said, according to FOX 13. "I mean, it's not going in vain. She's helping a lot of children."



**Goodridge complained about feeling sick and vomiting for weeks before she died. (Dean Goodridge)**

# EXHIBIT F

S



(/)

 

(https://elliswealthmanagement.net/)
(https://www.gesa.com/investment-services/?utm_source=lynnwood-
times&utm_medium=display&utm_campaign=investment-services-
24&utm_term=a50plus&utm_content=investment-convenient-online)

 

(https://electsamlow.com/)
(https://www.communitytransit.org/swift-orange?
utm_campaign=SOLRideNow&utm_source=local_publications&utm_medium=printonline)

# Utah boarding school loses license after death of Arlington teen

    

Kienan Briscoe(https://lynnwoodtimes.com/author/kienan-briscoe/)

**HURRICANE, Utah, July 18, 2023**—Diamond Ranch Academy, a Utah-based therapeutic boarding school, has lost its license (https://news.sky.com/story/diamond-ranch-academy-school-for-troubled-teens-ordered-to-shut-down-after-deaths-of-students-12921250) after Taylor Goodridge, 17, a Stillaguamish tribe member who lived in Arlington, Washington, died within its care last year. The Utah's Department of Health and Services determined the clinic failed to provide life-saving care that could have prevented her death.

Goodridge died from peritonitis, an autopsy revealed, which is a redness or swelling of the stomach, or abdomen's, lining typically caused by a burst appendix. Peritonitis is often treated with antibacterials or surgery in serious cases. If treated it is rarely deadly but can lead to a deadly infection spreading throughout the body if untreated.

A panel, which formed the decision to not renew Diamond Ranch's license, found that



RE-ELECT SAM LOW 39th STATE REP. POS. 1 (R)
*Sam is the Candidate Endorsed by First Responders*
*"Public safety and supporting our police are my top priorities. I have the record to prove it! I humbly ask for your vote!"- Sam Low*
Paid for by Friends for Sam Low | votesamlow.com | electsamlow@gmail.com
 (https://electsamlow.com/)

 (https://elliswealthmanagement.net/podcasts/)
(https://www.communitytransit.org/swift-orange?
utm_campaign=SOLRideNow&utm_source=local_publications&utm_medium=printonline)
(mailto: info@electroimpact.com)



*Taylor Goodridge. Photo Credit Dean Goodridge.*

Rachel Goodrich, a former academy worker, told Reporters at Fox 13 that Goodridge vomited on her way to dinner, four days before she passed away, before collapsing in her own vomit. Despite not being able to get her up, staff at this point still did not seek medical attention for the girl.

S

LYN

the panel reviewing the case said.

Goodridge's family was contacted by the school on December 20, 2022, and was told that their daughter had "suddenly passed away," Dean Goodridge, Taylor's father, told Reporters. He hadn't even been made aware that she was sick. Her family is now suing.

Case 4:22-cv-00102-DN-PK   Document 6   Filed 02/17/23   PageID.18   Page 1 of 13

Alan W. Mortensen (6616)
Lance L. Milne (14879)
Christopher J. Cheney (15572)
MORTENSEN & MILNE
68 South Main, Suite 700
Salt Lake City, Utah 84101
Telephone: (801) 521-4444
amort@mortmilnelaw.com
lmilne@mortmilnelaw.com
ccheney@mortmilnelaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DEAN JEFFRIES L. GOODRIDGE, Individually and as Personal Representative of the Estate of TAYLOR GOODRIDGE, Deceased, | **FIRST AMENDED COMPLAINT** Case No. 4:22-cv-000102-DN |
| Plaintiff, | |
| v. | |
| DIAMOND RANCH ACADEMY, INC.; a corporation, JOHN DOE I | |
| Defendant. | |

Plaintiff Dean Goodridge, individually and as the natural parent, heir and personal representative of Taylor Goodridge, a deceased minor, by and through their counsel of record, MORTENSEN & MILNE, hereby complains of Diamond Ranch Academy and alleges the following:

(https://quepasanow.com/wp-content/uploads/2023/07/Goodridge_Lawsuit.pdf)

*[Click on image above to download file or click here (https://quepasanow.com/wp-content/uploads/2023/07/Goodridge_Lawsuit.pdf).] Wrongful death lawsuit Dean Goodridge v Diamond Ranch Academy.*

Yet Goodridge's death was not the only reason the state denied Diamond Ranch's application for license renewal. In its official denial of new license letter the Health and Services Department noted there had been two patient deaths in prior years, in addition to Goodridge's, as well as a Child Protective Services (CPS) finding of physical abuse between an employee and one of its patients. The Diamond Ranch Academy had been placed on two corrective action plans since 2013 and was operating under a conditional license which it violated, the letter states.

The report by a panel of medical and legal professionals from the state Division of Licensing also detailed

a Reply

Utah is giving the clinic until August 14 to either send patients home or transfer to different schools.

Your email address will not be published. Required fields are marked *

Utah's Attorney General's Office has no plans of filing criminal charges against the boarding school due to lack of evidence, FOX 13 reported.

Comment

*Editor's Note: Featured Image credit goes to Dean Goodridge.*

Name *

Email *

Website

☐ Save my name, email, and website in this browser for the next time I comment.

# EXHIBIT G

| **From:** | Audrey Taoipu |
| **To:** | SHAPIRO RUTH; bbrown@jshfirm.com; Jaryl Rencher; Cami Schiel; Mark Nickel; Kyle Thompson; Rose Lindsay-Guimaraes; Robert Janicki; mford@strongandhanni.com; Alan Mortensen; Josh Ostler; Scheduling; Russandamber; Erik Largin |
| **Subject:** | Goodridge v DRA et al - Depo Exhibits |
| **Date:** | Friday, May 10, 2024 1:31:17 PM |
| **Attachments:** | image001.png |

Please see the Dropbox link below which will have the documents that Alan will be using for the depos next week Monday and Tuesday. Please let me know if you have any questions or problems with accessing the documents.
Thanks

*Audrey Taoipu*
Litigation Paralegal
MORTENSEN & MILNE
68 South Main Street, 7th Floor
Salt Lake City, Utah 84101
Phone: (801) 521-4444



Join folder

Copy to Dropbox

Download

Share

## Goodridge v DRA - Depo Exhibits

| Name ↑ | Modified |
| --- | --- |
| Chart Review Report of John O'Brien, MD.pdf | 3 days ago |
| Graph of Taylor Goodridge Medical Visits.pdf | 3 days ago |
| Notice of Panel Decision.pdf | 3 days ago |
| Page 06 of 1300 (Docs from H. Goebel).pdf | 3 days ago |
| Page 08 | |

When you join a shared folder, your name, email, and activity shows to other people with access.

OK