Cody Winchester (7197)
Bonneville International Corporation
55 North 300 West
Salt Lake City, Utah 84101
Email: cwinchester@bonneville.com
Phone: 801-558-5077

Attorney for Non-Party Bonneville International Corporation

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JEFFRIES L. GOODRIDGE, individually and as the natural father and personal representative of the Estate of TAYLOR GOODRIDGE, deceased, and AMBERLYNN WIGTION, individually and as the natural mother of TAYLOR GOODRIDGE, deceased,<br><br>  Plaintiffs,<br><br>vs.<br><br>DIAMOND RANCH ACADEMY, INC., a Utah corporation, BIG SPRINGS PROPERTIES, LLC, a Utah limited liability company, DANNY WORWOOD, M.D., a resident of Utah, BROOKS WILEY, FPMHNP-BC, a resident of Utah, and CAMERON HUGHES, R.N., a resident of Utah,<br><br>  Defendants. | **OBJECTION TO SUBPOENA DUCES TECUM**<br><br>Case No. 4:22-cv-00102-DN-PK<br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Pursuant to Rules 45(d)(2)(B) and 45(e)(2) of the *Federal Rules of Civil Procedure*, non-party Bonneville International Corporation ("Bonneville") hereby objects to the subpoena duces

tecum ("Subpoena"), served on July 16, 2024, directed at Bonneville by Defendant Diamond Ranch Academy, Inc. ("Diamond Ranch") in the above-captioned action.

## **OBJECTION**

Bonneville objects to the Subpoena because it seeks unpublished newsgathering materials that are privileged under the First Amendment to the U.S. Constitution and the *Utah Rules of Evidence*. Bonneville is a media and broadcasting company that operates radio and TV stations, websites, podcasts, and other digital media across six western U.S. markets. In Salt Lake City, Bonneville operates KSL TV and KSL NewsRadio, among other stations and digital platforms. The Subpoena seeks each and every document in Bonneville's possession or control related to the death of Taylor Goodridge on December 20, 2022, including, among other categories of documents, all drafts of news stories, "aired" and "non-aired" versions of newscasts, and the notes of Bonneville's investigative journalists, "including handwritten notes and/or audio/video notes." In short, Diamond Ranch seeks the entirety of Bonneville's newsgathering work product.[1]

While the reporter's privilege is not absolute, "compulsory disclosure in the course of a 'fishing expedition' is ruled out in the First Amendment." *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977) (reversing denial of investigative reporter's motion for protective order); *see also U.S. v. LaRouche Campaign,* 841 F.2d 1176, 1182 (1st Cir. 1988) ("We discern a lurking and subtle threat to journalists and their employees if disclosure of outtakes, notes and

---

[1] With the exception of its unpublished newsgathering materials and without waiving its objections or privilege claims, Bonneville produced its responsive documents to Diamond Ranch on July 30, 2024. Bonneville's unpublished newsgathering materials are comprised of interview notes, video interviews, and documents collected from public sources.

other unused information, even if nonconfidential, becomes routine and casually, if not cavalierly, compelled."). The Subpoena is objectionable because Diamond Ranch is evidently engaged in a fishing expedition and makes no attempt to overcome the qualified reporter's privilege.[2]

## I. Unpublished News Gathering Materials Are Protected from Disclosure by the First Amendment.

A qualified First Amendment privilege protects Bonneville from compelled disclosure of material obtained in the course of news gathering.[3] Under the controlling constitutional case law, to overcome the privilege, a party must establish that the information sought is (i) not available from alternative sources; (ii) goes to "the heart" of the party's case, such that the party's case rises or falls on such evidence; and (iii) is of certain relevance. *Silkwood*, 563 F.2d at 438.[4] The court is also to consider a fourth factor, the type of case, which distinguishes civil

---

[2] On July 18, 2024, the undersigned attempted to contact counsel for Diamond Ranch by phone to ascertain whether Diamond Ranch had any specific need for the subpoenaed documents and was directed by counsel's voicemail greeting to leave a telephone message, which she did. No one returned her call.

[3] The United States Supreme Court acknowledged the existence of First Amendment protection for newsgathering in *Branzburg v. Hayes,* 92 S. Ct. 2646, 2656 (1972), stating that "without some protection for seeking out the news, freedom of the press could be eviscerated." *See also Bottomly v. Leucadia Nat'l Corp.*, No. 94-C-590 B, 1996 WL 560188, at *2 (D. Utah July 2, 1996) (Boyce, J.) (recognizing "interest of protecting First Amendment and common law privileges of the journalists and reporters and not subjecting them to inappropriate or unnecessary inquiry as to their reporting inquiries").

[4] The privilege has been applied to journalistic material derived from both confidential and nonconfidential sources. *See Re/Max Int'l, Inc. v. Century 21 Real Estate Corp.,* 846 F. Supp. 910, 911-12 (D. Colo. 1994) (nonconfidential published information in newspaper articles); *Parsons v. Watson,* 778 F. Supp. 214, 218 (D. Del. 1991) (nonconfidential published information in newspaper articles); *U.S. v. Blanton,* 534 F. Supp. 295, 296 (S.D. Fla. 1982) (nonconfidential published information in newspaper articles); *Gonzales v. NBC,* 194 F.3d 29, 36 (2d Cir. 1999) (nonconfidential videotape interview outtakes); *Blum v. Sehlegel,* 150 F.R.D. 42, 44 (W.D.N.Y. 1993) (reporter's tape recording of nonconfidential interview); *U.S. v. Bingham,* 765 F. Supp. 954, 957 (N.D. Ill. 1991) (television news reporter's nonconfidential interview

cases, where the privilege is stronger, from criminal cases, where the privilege is weaker. *See Lester v. Draper*, No. 000906048 (Utah 3d Dist. Ct. Jan. 16, 2002) (holding "balancing of interests requires a stronger showing of need by a party seeking production of privileged newsgathering material in a civil case, as compared to a criminal case, because the constitutional rights of a criminal defendant are not implicated").

Diamond Ranch has not made this showing and cannot possibly do so. Diamond Ranch seeks literally every document in Bonneville's possession or control relating to Taylor Goodridge's death, including interviews with Diamond Ranch's own employees. The expansive scope of the subpoenaed documents demonstrates that Diamond Ranch merely seeks to free ride on the "considerable time and effort in obtaining facts and information of the subject matter in the lawsuit" expended by Bonneville. *Silkwood*, 563 F.2d at 436. That is forbidden, as the reporter's privilege protects both the public's interest in the dissemination of news and the reporter's "legitimate interest in seeking to protect the fruits of his labor." *Id.* at 437 ("There is as well the aspect in this case of appellee seeking to take personal advantage of Hirsch's efforts in obtaining his investigative work product.").

### II. Utah Rule of Evidence 509 Precludes Discovery of Bonneville's Newsgathering Work Product.

Utah Rule of Evidence 509 serves as a second, independent basis for Bonneville's objection.[5] Rule 509 provides broad protection for news reporters, including nearly absolute

---

outtakes); *U.S. v. Marcos,* 1990 WL 74521, 17 Med. L. Rptr. 2005, 2007 (S.D.N.Y. 1990) (nonconfidential outtakes from "60 Minutes" interview).
[5] *Wood v. Farmington City*, No. 2:10-CV-933-DB-PMW, 2011 WL 5834430, at *2 (D. Utah Nov. 21, 2011) (recognizing reporter's privilege and applying *Silkwood* factors without reference to Rule 509).

protection for confidential source information and qualified protection for non-confidential newsgathering information. Rule 509 was enacted by the Utah Supreme Court[6] in 2008 to dispel any doubt as to whether Utah recognizes the reporter's privilege.[7] Under Rule 509, a reporter may be compelled to disclose confidential source information only when "the person seeking the information demonstrates by clear and convincing evidence that disclosure is necessary to prevent substantial injury or death." Utah R. Evid. 509(b). If unpublished information is confidential, the party seeking the information must demonstrate a need "for that information that substantially outweighs the interest of a continued free flow of information to news reporters." *Id.* at 509(c). For nonconfidential, unpublished news information, the person claiming the privilege must demonstrate "that the interest of a continued free flow of information to news reporters outweighs the need for disclosure." *Id.* at 509(d).

The threat to freedom of the press posed by subpoenas like the one issued by Diamond Ranch, which seeks to turn Bonneville's journalists into its "unwilling investigative agents," has been recognized as "the most serious contemporary threat to freedom of the press in Utah."[8] Such subpoenas risk erosion of an independent press, deterioration of reporter-source relationships, and a slowing of the free flow of information to the public about issues of public concern.[9] Against this compelling interest, Diamond Ranch has only its private interest in

---

[6] Under the Utah Constitution, the Utah Supreme Court is given primary authority for enacting rules of evidence. Utah Const. art. VIII, § 4.

[7] "The committee proposed this rule to address any uncertainty that may exist under Utah law and to provide for uniformity in the recognition of the privilege by Utah courts." Utah R. Evid. 509 original advisory committee note.

[8] Edward L. Carter, Reporter's Privilege in Utah, 18 BYU J. Pub. L. 163, 163 (2003).

[9] *Id.* (citing *State v. Koolmo*, No. 981905396 (Utah 3d Dist. Ct. Mar. 29, 1999) (Judge Robert K. Hilder) (granting motion to quash subpoena)).

utilizing Bonneville's work product instead of conducting its own investigation. That is not an interest worthy of protection.

## CONCLUSION

In seeking wholesale disclosure of Bonneville's newsgathering work product, Diamond Ranch reveals that it is not seeking specific information that is vital to its case and unavailable from any other source. Diamond Ranch shows, on the contrary, that it seeks only to free ride on the fruits of Bonneville's labor. Such efforts are precluded by clear state and federal law.

DATED this 30th day of July 2024.

/s/ Cody Winchester
Cody Winchester
Bonneville International Corporation
55 North 300 West
Salt Lake City, Utah 84101

Attorneys for Non-Party Bonneville International Corporation

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on July 30, 2024, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will provide a copy by electronic mail to all counsel of record.

/s/ Cody Winchester
Cody Winchester
Bonneville International Corporation
55 North 300 West
Salt Lake City, Utah 84101

Attorneys for Non-Party Bonneville International Corporation